Frank J. HEIRONIMUS et al., Appellants,

v.

Joyce TATE et al., Appellees.

No. 10935.

Court of Civil Appeals of Texas.

Austin.

Feb. 28, 1962.

Rehearing Denied March 21, 1962.

Robert Mueller and E. Richard Criss, Jr., Austin, for appellants.

Graves, Dougherty, Gee & Hearon, William L. Garwood, Austin, for appellees.

HUGHES, Justice.

This suit was brought to construe the will of A. A. Biebel, deceased, duly probated

in the County Court of Travis County September 2, 1958.

The suit was filed by Frank J. Heironimus and other coindependent executors(trix) named in the will, and all beneficiaries under the will were parties to the suit, including Mrs. Mathilda Scott and Joyce Tate, the bequests to whom are the core of this controversy.

The answering defendants, appellees herein,[1] included Joyce Tate, but not Mrs. Scott.

Appellants and appellees filed motions for summary judgment. The motion of appellees was granted. Appellants' motion was denied.

Appellees' motion for summary judgment was based solely upon the pleadings and the attached exhibits which were the will proper and its two codicils.

Appellants' motion for summary judgment was similarly based on the pleadings and exhibits.

In addition to this motion, appellants filed an amended original answer in which they pleaded certain extrinsic facts "as an aid to the Court in the construction of the will of said A. A. Biebel." Appellants do not plead that the will is ambiguous in any respect, and we do not so find it, for which reason we will not recite the substance of their answer in this respect.

The controverted portions of the will and codicils of A. A. Biebel are:

"In the event that my wife, Florence E. Biebel, is not living at the time of my death, or at the death of my said wife, Florence E. Biebel, should she survive me, I give, devise and bequeath my one half of the community property

remaining at either my death or her death as the case may be as follows: * * *.

"3% of the net estate to Mrs. Mathilda Scott, 301A North Orange Street, Rialto, California;

"30% of the net estate to Joyce Tate, 1431 Alma Avenue, Salinas, California, with instructions and directions to my executors that the proceeds of this bequest shall be invested in an annuity in the Amicable Life Insurance Company of Waco. The terms of this annuity contract are left to the discretion of my executors, and their judgment in this matter shall be final;

" * * * (These and omitted bequests account for all but 9½% of the net community estate.)

"Realizing that there remains 9½% of the community estate, I direct my executors to divide all of the rest and residue of my estate in the same proportions as the bequests are made in this paragraph. In the event that any of the above named legatees are not living at the time of the distribution of the property, I direct my executors to distribute such deceased legatee's share to the heirs at law of the said deceased legatee."

(No other applicable limitations or restrictions on such bequests were stated in the will.)

*"THE SECOND CODICIL*

"I hereby revoke that portion of my will dealing with the bequest to the said Joyce Tate.

"I wish to give to the executors, by this codicil to my last will and testa-

---

1. The appellees are Joyce Tate, Mrs. Eleanor Baldridge et vir, C.K.T. Vandergriff et vir, Hubert Lee Ferguson and William C. Ferguson. C.K.T. Vandergriff is not a specifically named legatee but intervened as a lineal descendant of

Joyce Tate within the last clause of the second codicil which makes provision for "lineal descendants" of Joyce Tate. C.K.T. Vandergriff adopted the position of Joyce Tate in the trial court.

ment, absolute and full authority in dealing with the account of the said Joyce Tate. They shall use their own judgment as to the amount and method of payment of monies to the said Joyce Tate. Their decisions shall be final in this matter.

"I also revoke that portion of my will dealing with the bequest to Mrs. M. H. (Mathilda) Scott. They shall use their own judgment as to the amount and method of payment monies to the said Mrs. Scott. Their decisions shall be final in this matter.

"If the two above named heirs be not living at the time of my death, then distribution shall be made to their lineal descendants, or upon the death of the above named two persons, the distribution shall be made to their lineal descendants."

The Trial Court construed the will as follows:

"1. Said will and codicils vest[2] in and devise to the Defendant Joyce Tate an equitable and beneficial life estate in and to a full 30% of the net estate of A. A. Biebel, Deceased, with the bare legal title to said 30% being vested in the Plaintiffs' executors, Frank J. Heironimus, Gordon H. Heironimus, and Marie S. Heironimus, as trustees, and with the remainder, both legal and equitable, being vested in fee simple in the lineal descendants of the said Joyce Tate. The trustees of said trust shall make payments to the said Joyce Tate during the continuation of said trust in such form, manner and amount and at such intervals as they in the exercise of their own reasonable discretion shall deem best, bearing in mind the needs and circumstances of the beneficiary.

"2. Said will and codicils vest in and devise to the Defendant Joyce Tate, in addition to the interest mentioned in paragraph 1 hereof, the full right, title and interest, without any limitation or restriction whatsoever, in and to the same fraction of the remainder of the net estate of A. A. Biebel, Deceased, after satisfaction of the specific bequests made elsewhere in said will and codicils, as 30% of the net estate of A. A. Biebel, Deceased, is of the total of all the specific bequests made in said will and codicils.

"3. Said will and codicils vest in and devise to the Defendant Mrs. M. H. (Mathilda) Scott an equitable and beneficial life estate in and to a full 3% of the net estate of A. A. Biebel, Deceased, with the bare legal title to said 3% being vested in the Plaintiffs-executors, Frank J. Heironimus, Gordon H. Heironimus, and Marie S. Heironimus, as trustees, and with the remainder, both legal and equitable, being vested in fee simple in the lineal descendants of the said Mrs. M. H. (Mathilda) Scott. The trustees of said trust shall make payments to the said Mrs. M. H. (Mathilda) Scott, in such form, manner and amount, and at such intervals as they in the exercise of their own reasonable discretion shall deem best, bearing in mind the needs and circumstances of the beneficiary.

"4. Said will and codicils vest in and devise to the Defendant Mrs. M. H. (Mathilda) Scott, in addition to the interest mentioned in paragraph 3 hereof, the full right, title and interest, without any limitation or restriction whatsoever, in and to the same fraction of the remainder of the net estate of A. A. Biebel, Deceased, after satisfaction of the specific bequests made elsewhere in said will and codicils, as 3% of the net estate of A. A. Biebel, Deceased, is of the total of all of the specific bequests made in said will and codicils."

2. The first codicil is not pertinent to this suit.

Appellants, by pleadings, sought the following construction of the will:

"(1) That by the second codicil to the will of A. A. Biebel, Deceased, the executors of said will were devised, in their individual capacities, 33% of the net assets of the Estate of A. A. Biebel, Deceased, or

"(2) That by the second codicil to the will of A. A. Biebel, Deceased, the executors of said will were given a general power of appointment over 33% of the net assets of the Estate of A. A. Biebel, Deceased, or

"(3) That by the second codicil to the will of A. A. Biebel, Deceased, the executors of said will were given a special power of appointment over 33% of the net assets of the Estate of A. A. Biebel, Deceased, or

"(4) That by the second codicil to the will of A. A. Biebel, Deceased, the bequest to the defendant Joyce Tate and the bequest to the defendant Mathilda Scott were revoked and the attempted disposition of each of said interests so revoked fails and 33% of the net assets of the Estate of A. A. Biebel, Deceased, is to be added to the residuary clause of said will and pass in accordance with the said residuary clause."

Appellants brief points 1, 2, 5 and 6 jointly. Points 2 and 6 are dependent upon extrinsic evidence and we will not discuss them for the reason that, as stated, the will and codicil are not ambiguous.

Points 1 and 5 are that the Court erred in holding that trusts were created in behalf of Joyce Tate and Mrs. M. H. Scott, respectively, for the reason that the will and codicil do not manifest an intention to create a trust.

Appellants concede the rule that the use of technical words are not essential to a trust. They rely upon the rule that the parties must plainly intend to create a trust in order that a trust be formed.

Arguendo, appellants ask, What is res of the Tate and Scott trusts? Clearly it is 30% of the net estate for Joyce Tate and 3% of the net estate for Mrs. Scott. As to Mrs. Scott, the codicil did not expressly give authority over her bequest to the executors. Construing the codicil in its entirety, it is clear that the "They" and "their" used in the second sentence of the third paragraph unquestionably refer to the executors, and hence give them control of the Scott bequest.

Appellants suggest as to Joyce Tate that the codicil gave to the executors only a gift of a "power" over the 30%. This suggestion is not explained, but presumably it meant that the executors could give this 30% to others than Joyce Tate. We reject this suggestion in the same manner that is made, summarily.

The second question appellants ask is "How are the executors to administer the trust(s)?"

Here again appellants concede that it is not essential to the validity of a trust that the terms of the trust be stated in detail.

■ From the general and plenary discretionary authority given the executors over the res of these trusts appellants argue that no trust was intended. This contention is answered by the following statement from 2 Scott on Trusts (2d ed.) p. 961, Sec. 129: "The amount which a beneficiary is entitled to receive may be left to the discretion of the trustee."

Texas cases which follow this rule are Adams v. Williams, 112 Tex. 469, 248 S. W. 673; Bell v. Board of Directors, 219 S.W.2d 93; Waco Civil Appeals, N. R. E. and State v. Rubion, 158 Tex. 43, 308 S.W. 2d 4. The last case contains an excellent discussion of the nature of such discretionary authority. .

The third question which appellants propound as indicating a lack of intention to create a trust is, Are the payments to be made to Joyce Tate and Mrs. Scott to come from principal only, or from principal and income?

Neither the will nor codicil makes any distinction between the principal and income constituting the Tate 30% or the Scott 3% in directing payments to be made to these beneficiaries. We have no authority, or desire, to do what the testator did not do. Both principal and income of the respective bequests are subject to disposal by the executors to Joyce Tate and Mrs. Scott.

We quote appellants' fourth question:

"In the absence of any facts that would indicate an intent to create a spendthrift trust, is it likely that a testator intending to create a trust would give the trustee the power to bestow no benefit on the supposed beneficiary?"

In answering this question we need only to refer to the opinion in State v. Rubion, supra, where it is held that a trustee may not act arbitrarily, and that the exercise of his discretion is subject to judicial review.

Appellants' fifth question is: "What is the duration of the trust?" This question is categorically answered by the codicil. The trusts terminate on the deaths, respectively, of Joyce Tate and Mrs. Scott. Upon such events, "distribution shall be made to the lineal descendants." There is no discretion in and no further trust to be found or intimated in this language.

Appellants' last question is related to the extrinsic evidence which we have held is inadmissible as an aid to a construction of this will.

It is our opinion that a valid, plain and understandable trust was created by the will and codicil of A. A. Biebel for the benefit of Joyce Tate and Mrs. M. H. Scott.

Appellants' points 3 and 7 are jointly briefed and are that the subject matter of the bequests to Joyce Tate and Mrs. Scott are not sufficiently described. We quote the substance of the argument appellants made under these points:

"In the case of the Tate 'trust' to what does the trustee have the legal title by virtue of the second codicil? They are given no property, but are given 'absolute and full authority in dealing with the account of the said Joyce Tate.' The account of Joyce Tate was 30% of the net estate. Are these words sufficient to grant to the executors the legal title to 30% of the net estate or are the words a gift of a power over 30% of the net estate with the legal title remaining in Joyce Tate subject to this power in the executors?

"In the case of the Scott 'trust' there are absolutely no words giving to the executors a legal title to any property whatsoever. All the executors were given here was the discretion as to the 'amount and method of payment of monies' to Mrs. Scott. There can be no question that these words are not a sufficient description of the trust *res.*"

Construing the will and codicil as one instrument, we read the bequest to Mrs. Scott to be:

I give and set aside 3% of my net estate for the benefit of Mrs. Scott, provided that my executors shall use their own judgment as to the amount and method of paying monies therefrom, from both principal and accumulated income, to her during her lifetime and upon her death the remainder of such estate, if any, shall be distributed among her lineal descendants. The decision of my executors in making such payments to Mrs. Scott shall be final.

This bequest vests legal title in the executors and restricted beneficial title in

Mrs. Scott and full title in the remainder, if any, in her lineal descendants.

The Tate bequest is of the same nature.

■ In our opinion, the res is adequately described. See: McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412.

Appellants jointly brief points 4 and 8 which assert error of the Court in awarding full title to Joyce Tate and Mrs. Scott, in their respective interests, in the remainder of the estate after satisfying its specific bequests

The basis of these points is that the codicil revoked the bequests to Joyce Tate and Mrs. Scott.

■ An intention to revoke a bequest in a will must be clearly expressed in a codicil if it is to be given effect.

A revocation of a bequest in a will to A may be effected by a codicil which simply states "I revoke the bequest to A." Much more than that is present here. The codicil revoked only that portion of the will "dealing" with the bequests to Joyce Tate and Mrs. Scott.

As to Joyce Tate, the will expressly directs the manner in which the bequest to her should be invested. Clearly this only direction was revoked since other directions were made.

As to Mrs. Scott, the will gave no specific directions as to the bequest made to her, but the absence of such directions was meaningful and, in our opinion, constituted a "dealing" with the bequest. This bequest as originally dealt with in the will gave to Mrs. Scott full title to the 3%. The codicil dealt with this bequest and made radical changes in it.

■ Almost every word of the codicil evidences an intention to alter, but not revoke, the bequests made to Joyce Tate and Mrs. Scott. We would have to discard most of the language contained in the codicil if we agreed with appellants' construction of it. These bequests were not, in our opinion, revoked by the codicil.

Point 9 is that the Court erred in not construing the will and codicils as granting to appellants a power of appointment over 33% of the net estate of decedent.

The result of this construction is reflected by the following excerpts from appellants' brief:

"It creates a fund of 33% of the net estate.

"It gives the executors a special power to appoint this 33% fund, as their judgment dictates, between Tate and Scott.

"The executors have no duties to perform under the second codicil except to decide how much of the 33% Joyce Tate is to receive and how much Mrs. Scott is to receive.

" * * * the executors have nothing to do but take the 33% and make a distribution between Tate and Scott."

In other words, appellants would have us take the Scott 3% and the Tate 30%, combine them, and direct the executors to make disbursal as they pleased to Joyce Tate or Mrs. Scott, or, perhaps, to their lineal descendants.

■ This construction would distort the plain scheme of the will. It is without basis in fact or law.

Point 10 is that fact issues were raised sufficient to prevent the rendition of a summary judgment. The facts relied upon are extrinsic to the will and, since the will is unambiguous, cannot be used as aids to its construction.

The judgment of the Trial Court is affirmed.

Affirmed.