**Mary C. BANK, as Executrix of the Estate of E. W. Bank, Appellant,**

v.

**BANK LUMBER COMPANY, a corporation, et al., Appellees.**

**No. 47244.**

Court of Appeals of Oklahoma,
Division No. 2.

June 17, 1975.

As Amended June 25, 1975.

Rehearing Denied July 10, 1975.

Certiorari Denied Nov. 18, 1975.

Released for Publication by Order of Court of Appeals Nov. 20, 1975.

Richard S. Karam, Will T. Wright, Wright, Sawyer & Traynor, Enid, for appellant.

Harold J. Singer, Mitchell & Singer, Enid, for appellees.

BRIGHTMIRE, Judge.

This appeal requires construction of a section of the Oklahoma Trust Act in order to resolve the primary question raised here, namely, whether the court correctly sustained demurrers to both causes of action attempted to be pleaded by plaintiff Mary C. Bank. We hold it did.

In 1954 the late Clara E. Bank executed a will devising the bulk of her estate to a trustee to hold for the benefit of her husband, E. W. Bank, during his life. These two people owned and operated the Bank Lumber Company in Enid, Oklahoma, for many years. Also in 1954 E. W. Bank established an irrevocable inter vivos trust naming himself and two of his four children trustees. To these trustees the settlor transferred 375 shares of Bank Lumber Company stock and instructed them to pay the net income realized from the trust assets to settlor during his lifetime. Both trusts were to terminate on E. W. Bank's death and their assets were to be distributed to his four children.

Upon Clara Bank's death in 1961 most of her considerable estate went to the testamentary trust and her nominee, E. W. Bank was appointed trustee.

In 1962 Mr. Bank married plaintiff. They lived together until his death in 1969. This action was filed four and a half years later.

Plaintiff sets up what she refers to as two causes of action in her petition. In the first one she alleges the Clara Bank trust included 375 shares of Bank Lumber Company common stock and that although E. W. Bank was to receive the net income from trust assets, he received less than one percent per annum of their fair market value between 1962 (the year she married him) and his death—the trust terminating event making its assets distributable to the four individual defendant children. The foundation for her theory of recovery is embodied in the first cause of her prayer for relief—"That the amount set forth in 60 O.S.A. § 175.35(B) [1] be allocated as de-

---

1. 60 O.S.1971 § 175.35 reads:
"Upon conversion of any unproductive property, allocation between principal and income shall be as follows:
"A. Where any part of a principal in the possession of a trustee consists of realty or personalty, whether tangible or intangible property, which for more than a year and until disposed of as hereinafter stated has not produced an average net income, not considering depreciation or obsolescence, of at least one per cent (1%) per annum of its fair inventory value or in default thereof its market value at the time the principal was established or of its cost where purchased later, and the trustee is under a duty to change the form of the investment as soon as it may be done without sacrifice of value and such change is delayed, but is made before the principal is finally distributed, then the tenant, or in case of his death, his personal representative, shall be entitled to share in the net proceeds received from the property as delayed income to the extent hereinafter stated. The basis under this Section for establishing value of property acquired through foreclosure of a mortgage held by the trust, shall be the net investment in the property up to the date of resale by the trust and not the price bid at the foreclosure sale.

layed income from said testamentary trust: said amount being equal to five per cent (5%) per annum of the fair market value of said trust assets for the period beginning on the date of Clara E. Bank's death and ending on February 14, 1969, the date of E. W. Bank's death."

Plaintiff's second cause of action predicates a request for the same relief on the same theory with reference to the inter vivos trust.

Criteria for the utilization of the five-percent formula contained in § 175.35 emerges from the context of the statutory text preceding it. In pertinent part it reads:

"Upon conversion of any unproductive property, allocation between principal and income shall be as follows:

"A. *Where* . . . the trustee is under *a duty to change* the form of the investment as soon as it may be done without sacrifice of value *and such change is delayed, but is made before the principal is* finally *distributed*, then the tenant, or . . . [if deceased] his personal representative, shall be entitled to share in the net proceeds . . . as delayed in-

come to the extent . . . [provided for in paragraph 'B']." (emphasis ours)

It appears that one of the first things plaintiff must *plead* and *prove is that* the trustee of the two trusts breached a duty to the income beneficiary to convert "any unproductive" asset.

Plaintiff's petition contains no allegation giving rise to a duty to convert, nor in fact do the trust instruments she attaches as exhibits disclose imposition of such a duty. In one of the exhibits—the testamentary trust—Clara Bank said, "I direct my trustee to hold my estate received by him . . . in trust . . . [and the] trustee shall invest my trust estate and keep the same . . . pay the net income therefrom to my husband, E. W. BANK . . . [and if] insufficient to support . . . [him] in as much comfort as he now enjoys, I empower my trustee to invade the principal . . . to so provide for him." In a later trust article the testatrix gives broad powers to her trustee to sell trust assets and otherwise manage the estate including power to "[a]bandon property deemed . . . burdensome or valueless." Nowhere in the exhibit is there to

Net investment shall consist of all moneys invested and advanced.

"B. Such income shall be the difference between the net proceeds received from the property and the amount which, had it been placed at simple interest at the rate of five per cent (5%) per annum for the period during which the change was delayed, would have produced the net proceeds at the time of change, but in no event shall such income be more than the amount by which the net proceeds exceed the fair inventory value of the property or in default thereof its market value at the time the principal was established or its cost where purchased later. The net proceeds shall consist of the gross proceeds received from the property less any expenses incurred in disposing of it and less all carrying charges which have been paid out of principal during the period while it has been unproductive. No allocation to income shall be made when the net proceeds from any sale are less than the value of the property as determined by subsection A of this Section.

"C. The change shall be taken to have been delayed from the time when the duty to make

it first arose, which shall be presumed, in the absence of evidence to the contrary, to be one year after the trustee first received the property if then unproductive, otherwise one year after it became unproductive.

"D. If the tenant has received any income from the property or has had any beneficial use thereof during the period while the change has been delayed his share of the delayed income shall be reduced by the amount of such income received or the value of the use had.

"E. In case of successive tenants the delayed income shall be divided among them or their representatives according to the length of the period for which each was entitled to income.

"F. Where a trustee is required to change the form of investment under the provisions of the instrument by which the trust is created or under the existing law, he shall use reasonable care in determining the necessity for such change and the time and manner of changing said form of investment. Provided that the provisions in this Section shall not be construed to require a trustee to change the form of investment."

be found an express imposition of a duty upon the trustee to convert unproductive property, nor can we find language implying such a duty.

In her brief plaintiff advises that the "basic issue in this case is whether 60 OSA 175.35 applies to the two trusts . . . [in question]." In arguing that it does she seems to assume (1) the statute creates a duty to convert unproductive property; and (2) its income-principal allocation provisions are invoked by either "conversion or distribution of the corpus."

We think neither assumption is valid. The last sentence of the statute refutes the first one when it says: "[T]he provisions in this Section shall not be construed to require a trustee to change the form of investment."

The second assumption is destroyed by paragraph "A" restricting change of property forms to those "made before the principal is finally distributed."

By not otherwise discussing the source or nature of the duty sought to be imposed upon the trustee handling assets of either trust in question, we are inclined to believe plaintiff recognized an absence of a duty to convert the lumber company stock—the property she considers to have been unproductive, at least in terms of income. Instead she invites us to look into the matter of whether Edward W. Bank, Jr., acquitted himself fairly as a trustee, saying: "It is clear from the will of Clara E. Bank which is attached to the Petition as an Exhibit that Edward W. Bank, Jr., her son, is both the trustee and a beneficiary in the trust. In this dual capacity as trustee and beneficiary, the court must look to the trustee to exercise special care to be fair."

Our first reaction to this suggestion prompts a question . . . "fair" to whom? Plaintiff?—who has never been and is not now a "beneficiary" of either trust as that term is defined by 60 O. S.1971 § 175.3(K) [2]—or to the deceased, a former beneficiary?

Plaintiff may have overlooked the fact that in the testamentary trust Clara E. Bank appointed E. W. Bank trustee. We assume he served in this capacity from 1961 until his death in 1969 (the end of the complained period), because there is no allegation to the contrary. As a matter of fact, the petition contains but one allegation on the subject and it seems to bear this out, namely: "That Edward W. Bank, Jr., as *successor trustee* of said testamentary trust . . . ." a status we assume took place at the death of his father in accord with his mother's alternate nomination. (emphasis ours) Under the circumstance of E. W. Bank serving as trustee of the testamentary trust rather than the son, we know not how to reach the "fairness" question impliedly posed by plaintiff, much less answer it. First of all we cannot seriously imagine E. W. Bank as trustee being unfair to himself as beneficiary. Secondly, if conceivably he might have been, we are confident that to him belonged the exclusive duty to correct the matter as well as the exclusive right to waive it. The result is that plaintiff, as executrix of E. W. Bank's estate, seeks not to enforce any recognizable surviving cause of action deceased may have had, but to advance an indistinct claim for recovery by her late husband's estate from various defendants in the first count based on an alleged breach of trust by someone (E. W. Bank, Jr.) who was not the trustee at the times complained of—a theory we attribute to a triumph of hope over accurate factual analysis. The conclusion appears to be inescapable that plaintiff's first count does not allege facts identifying a breach of any duty on the testamentary trustee's part to sell any of the trust assets, unproductive or otherwise.

2. 60 O.S.1971 § 175.3(K) reads:
"'Beneficiary' means any person entitled to receive from a trust any benefit of whatsoever kind or character."

■ Coming now to plaintiff's second count regarding the inter vivos trust, the short answer to plaintiff's contention is that regardless of who the trustee was, the inter vivos trust instrument executed by E. W. Bank—part of which is attached to plaintiff's petition—expressly confides the following power in the trustee:

> "2.01 To retain, whether orginally [sic] a part of the trust estate or subsequently acquired . . . any property, whether or not such property is . . . unproductive, or of a wasting nature, all without diversification as to kind or amount."

Vesting power in the trustee to retain unproductive assets renders inoperative plaintiff's claim for relief based on breach of an implied duty to convert such property.

The trial court correctly concluded that plaintiff's petition failed to state facts sufficient to entitle her to the relief she seeks. His judgment in favor of defendants based on sustaining demurrers to the two purported causes of action is therefore affirmed.

NEPTUNE, P. J., and BACON, J., concur.