PERFECT UNION LODGE NO. 10, A.F. AND A.M., OF SAN ANTONIO, Petitioner,

v.

INTERFIRST BANK OF SAN ANTONIO, N.A., Guardian of the Estate of Cornelia W. Lumpkin, an Incompetent Person, Respondent.

No. C–5682.

Supreme Court of Texas.

March 23, 1988.

Dissenting Opinion April 20, 1988.

Rehearing Denied May 11, 1988.

Dissenting Opinion on Rehearing June 22, 1988.

Amen, P.C., Richard Tinsman, Tinsman & Houser, Inc., San Antonio, for respondent.

ROBERTSON, Justice.

This is a suit to construe the will of an attorney, A.H. Lumpkin. The pertinent provisions of his will are as follows:

### IV.

*I give, devise and bequeath to my beloved wife, Cornelia Lumpkin, all property of every kind and character I may own at my death,* including real, personal and mixed, wheresoever situated, except the foregoing property *given to her absolutely, for and during her natural life, to have the use and benefit thereof during her said natural life.*

This bequest, however, to my said wife is in lieu of her community interest in our homestead comprised of approximately 133 acres on the Hausman Road, out of the Perry Davis Survey in Bexar County, Texas. . . .

### V.

Subject to the foregoing *life estate devised to my wife,* Cornelia Lumpkin, or in case she dies before I do, *I give, devise and bequeath the hereinbefore described homestead in Bexar County, Texas and the 40 acres of land in Dimmit County, Texas, and all the rest and residue of my property, real, personal and mixed, wheresoever situated, to Perfect Union Lodge No. 10 A.F. & A.M. of San Antonio, Texas, in fee simple* . . . .

### VII.

I hereby nominate, constitute and appoint Charles W. Barrow and Travis M. Moursund *Independent Executors* of this my Last Will and Testament, and direct that no bond or security be required of them as such, and that no action be taken with reference to my estate other than the probating of this my Will and the filing of an inventory, appraisement and list of claims of my estate as may be required by law.

\* \* \* \* \* \*

My said *Executors* shall handle my estate during the life of my wife, Cornelia Lumpkin, and as long thereafter as may be reasonably necessary to carry out the terms of this my Will.

*To the end that my said Independent Executors shall have full power and*

Elwood Cluck, San Antonio, for petitioner.

Allan G. Paterson, Jr., and Henry J. Amen, III, Bayern, Paterson, Aycock &

*authority to handle and settle my said estate without the necessity of court orders, I hereby confer upon them all such powers as are given to Trustees under and by virtue of the provisions of the Texas Trust Act* (Article 7425b, Vernon's Civil Statutes of the State of Texas Annotated) *as the same exists at the date of this my Will, regardless of whether such Act may hereafter be repealed or amended, as fully as though its provisions were written in this my Will; provided further that my said Independent Executors may also exercise any additional powers conferred on Trustees by any subsequent amendment of such Act, it being my intention that my Executors appointed by me in this my Will shall have full and complete power to manage, sell, mortgage, invest and reinvest and handle my estate as to such Executors may seem best and proper without the necessity of court orders.*
(emphasis added).

The probate court concluded that the will created a testamentary trust with Cornelia Lumpkin as income beneficiary. The executor of the estate, Travis Moursund[1] was named trustee. Pursuant to section 113.110 of the Texas Property Code, the court further ordered the trustee to sell certain real property which it found had been underproductive since 1975. The proceeds were to be distributed between Cornelia Lumpkin and Perfect Union Lodge according to section 113.110(a). The court of appeals affirmed the trial court judgment. 713 S.W.2d 391. We affirm the judgments of these courts.

■ The cardinal rule for construing a will requires that the testator's intent be ascertained by looking to the provisions of the instrument as a whole, as set forth within the four corners of the instrument. The court shall effectuate that intent as far as legally possible. *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex.1971); *Sellers v. Powers*, 426 S.W.2d 533, 536 (Tex.1968). The will should be construed so as to give effect to every part of it, if the language is reasonably susceptible of that construction. *Republic National Bank of Dallas v. Fredericks*, 155 Tex. 79, 83, 283 S.W.2d 39, 43 (1955). However, the court will not redraft the will or add provisions under the guise of construction in order to effectuate some presumed intent of the testator. *Shriner's Hospital for Crippled Children v. Stahl*, 610 S.W.2d 147, 151 (Tex.1980); *Huffman*

v. *Huffman*, 161 Tex. 267, 273, 339 S.W.2d 885, 888 (1960).

■ The requisites of an express trust are provided by the Texas Trust Code (TEX.PROP.CODE ANN. §§ 101.001-115.017 (Vernon 1984)); however, the new trust code provides that the Texas Trust Act (repealed 1984) will govern the creation of trusts entered into while the Act was in effect. TEX.PROP.CODE ANN. § 110.006(2) (Vernon 1984). Under the Act, a testamentary trust is created through "[a] transfer by will by the owner of property to another person or persons as trustee for a third person or persons...." Texas Trust Act, ch. 148, § 7, 1943 Tex.Gen.Laws 232, 234, *repealed and codified* TEX. PROP.CODE ANN. § 112.001(3) (Vernon 1984). Implicit in this statutory definition is the requirement of a trustee with administrative powers and fiduciary duties. *Nolana Development Ass'n. v. Corsi*, 682 S.W.2d 246, 248 (Tex.1984). Even more fundamental than this, it is well established that the legal and equitable estates must be separated; the former being vested in the trustee and the latter in the beneficiary. *Cutrer v. Cutrer*, 334 S.W.2d 599, 605 (Tex.Civ.App.—San Antonio), *aff'd*, 162 Tex. 166, 345 S.W.2d 513 (1961); *Miller v. Donald*, 235 S.W.2d 201, 205 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.); G. BOGERT, TRUSTS & TRUSTEES § 141, at 4 (2d ed. 1979). This separation of the legal and equitable estates in the trust property is the basic hallmark of the trust entity.

■ Technical words of expression, however, are not essential for the creation of a trust. To create a trust by a written instrument, the beneficiary, the *res*, and the trust purpose must be identified. It is not absolutely necessary that legal title be granted to the trustee in specific terms. Therefore, a trust by implication may arise, notwithstanding the testator's failure to convey legal title to the trustee, when the intent to create a trust appears reasonably clear from the terms of the will, construed in light of the surrounding circumstances. *Dulin v. Moore*, 96 Tex. 135, 139, 70 S.W. 742, 743 (1902); *Najvar v. Vasek*, 564 S.W.2d 202, 210 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Gonzalez v. Gonzalez*, 457 S.W.2d 440, 447 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.); *Heironimus v. Tate*, 355 S.W.2d 76, 80 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.); *Paton v. Baugh*, 265 S.W. 250, 252-53

---

1. Charles Barrow resigned as executor in 1978.

(Tex.Civ.App.—Dallas 1924, no writ); *see also McMurray v. Stanley*, 69 Tex. 227, 235, 6 S.W. 412, 414–15 (1887).

In *Dulin v. Moore*, this court construed a will in which the testator, after devising real property in fee simple, provided that another person would be "trustee to receive and control the property" during the lives of the devisees. The court recognized the issue as being whether the testator intended to confer mere "naked powers" upon the trustee or to invest him with legal title for the purposes of the trust. The court concluded that "although the will contains no words which expressly convey legal title to Dulin, the intention that he should take the legal title is as clearly manifested as if express terms had been employed." *Dulin*, 96 Tex. at 139, 70 S.W. at 743.

Similarly, in *Heironimus v. Tate*, the court construed a will in which there were no express words giving the executor legal title to any property. The will bequeathed property to two beneficiaries but further provided that the executors had discretion in making distributions to the beneficiaries during their lives, and upon their deaths the remainder passed to their lineal descendents. The court concluded that a trust had been created with legal title vested in the executors. *Heironimus*, 355 S.W.2d at 80.

■ As in *Dulin* and *Heironimus*, we must construe a will which lacks specific language conferring legal title upon the executors. From the provisions of the will as a whole, A.H. Lumpkin's intent to create a testamentary trust can be ascertained. By its terms, Lumpkin devised all the residue of his estate to his wife for her life, with the remainder to Perfect Union Lodge. He clearly intended to separate the management and control of his residual estate from the beneficial interest conferred upon his wife. The provision in paragraph VII that "my said executors shall handle my estate during the life of my wife" indicates that Lumpkin intended to provide for more than a mere settlement of his business affairs and distribution of assets. Furthermore, the provision, granting the executors the powers found under the Trust Act, authorized Moursund to exercise greater control over the property than was necessary for administration of the estate. We hold that Lumpkin's will created a testamentary trust for the life of his wife, which would terminate upon her death.

■ Perfect Union contends the Probate Court erred in assuming jurisdiction over the matter because it lacked subject matter jurisdiction under the Texas Probate Code. We disagree. All courts exercising original probate jurisdiction have the power to hear "matters incident to an estate." TEX. PROB.CODE ANN. § 5(d) (Vernon Supp. 1988). The phrase "matters incident to an estate" includes the interpretation and administration of testamentary trusts. TEX. PROB.CODE ANN. § 5A(b) (Vernon Supp. 1988). Having concluded that the will created a testamentary trust, we hold the probate court properly exercised its jurisdiction.

■ Next, Perfect Union contends the court of appeals erred in holding Moursund had no discretion in determining whether to sell the underproductive property. We disagree. The trust property which Moursund was ordered to sell had been underproductive since 1975 in that it produced an annual net income of less than one percent of its value. TEX.PROP.CODE ANN. § 113.110(b) (Vernon 1984). Therefore, Moursund's duty to sell the property arose in 1976, one year after the property became underproductive. TEX.PROP.CODE ANN. § 113.110(c) (Vernon 1984). Thus Moursund was properly ordered to sell the underproductive property and distribute the proceeds between Cornelia Lumpkin and Perfect Union Lodge. TEX.PROP.CODE ANN. § 113.110(a) (Vernon 1984).

■ Finally Perfect Union contends that, because Cornelia Lumpkin has died since the arguments were heard, the cause has become moot. It claims the interest in the property owned by the deceased terminated upon her death, regardless of whether the will created a life estate or a trust. Although we realize the trust terminated upon her death, we are also mindful of Trust Code section 113.110(a) which provides that "if the change [in investment] is delayed but is made before the principal is finally distributed ... the income beneficiary or *the beneficiary's estate* is entitled to a share of the net proceeds...." TEX. PROP.CODE ANN. § 113.110(a) (Vernon 1984). Accordingly, we hold Cornelia Lumpkin's estate is entitled to part of the proceeds from the sale as determined under section 113.110(a).

The judgment of the court of appeals is affirmed.

SPEARS, J., not sitting.

RAY, J., dissented, joined by PHILLIPS, C.J., and WALLACE, J.

RAY, Justice, dissenting.

I respectfully dissent. It is fundamental for the creation of a trust that the legal estate must be vested in the trustee and the equitable estate vested in the beneficiary. *Cutrer v. Cutrer,* 334 S.W.2d 599, 605 (Tex.Civ.App.—San Antonio 1960) *aff'd,* 162 Tex. 166, 345 S.W.2d 513 (1961). This will contains no language expressing the testator's intention that the legal estate vest in the executors or that a trust be created. I would reverse the judgment of the courts below.

Paragraphs IV and V evidence the testator's intent to devise to his wife a life estate in all the rest and residue of his estate, with the remainder in fee simple to Perfect Union Lodge. The majority relies on the last two clauses in paragraph VII to hold that a trust was created because the testator granted the executors powers under the Texas Trust Act during the life of his wife. However, no transfer of the legal estate to the executors was effectuated by these administrative provisions. I would hold that the will's dispositive provisions, which state that the nature and quantum of the estate vested in the wife, should control over the will's purely administrative provisions establishing the executors' powers and duties.

This case is controlled by the ruling in *Beckham v. Beckham,* 227 S.W. 940 (Tex. Comm'n App.1921, judgm't adopted) in which the testator made an absolute bequest of all of her property to her children, followed by a provision stating:

> I hereby authorize and empower my said executor to take possession of any and all property belonging to my estate; to sell and convey same; to invest any money that may come into his hands in such way as he shall deem proper; and to execute all the deeds of conveyance, acquittances and receipts necessary and proper to be executed in order to carry out the object of this instrument.

To determine whether the testator intended to create a trust empowering the executor to administer the estate until the children reached their majority, the court considered the following: (1) that the will expressly stated, "my said executor"; (2) that the additional powers conferred were not inconsistent with the duties of the executor; and, (3) that there was no language indicating an intent to create a trust. The court held that no trust was created because no clear intent appeared from the will. *See also Time Securities v. West,* 324 S.W.2d 583, 585–86 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.).

This is a self-made will of an attorney who practiced law in Texas for over 50 years and it is apparent by his reference to the Texas Trust Act that he was cognizant of the requisites for the creation of a testamentary trust, but he specifically excluded designating the executors as trustees. It is logical to assume that the terms used in Lumpkin's will were used correctly and intentionally unless the context of the will showed a clear intention to the contrary. *Mitchell v. Mitchell,* 151 Tex. 1, 244 S.W.2d 803, 806 (1951).

The majority erroneously relies on cases inapposite to the instant case, *McMurray v. Stanley,* 69 Tex. 227, 6 S.W. 412 (1887) and *Gonzalez v. Gonzalez,* 457 S.W.2d 440 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.), which held that the legal estate was separated from the equitable estate. In *McMurray,* the testator devised the residue of her estate to her husband and provided that he would have full control and the right to use and dispose of the estate as he desired, but any property remaining at the husband's death would pass to the testator's nieces. The court held that the testator's will established a trust in which her husband was trustee for the benefit of the remainders, her nieces. The legal estate had already vested in the husband and the equitable estate was vested in the beneficiaries subject to being defeated by the husband's right to dispose of or consume the property during his lifetime, thus allowing a trust to come into existence. Compared with the instant case, the legal estate never vested in the executors, nor was there evidence of this intent. The legal estate was vested in Mrs. Lumpkin. Similarly, in *Gonzalez,* the testator devised his estate to his wife and seven minor children in eight equal parts. The court found that the obligations imposed upon the wife to maintain and improve the property created a trust for the benefit of the wife and children, with the wife as trustee. As in *McMurray,* the legal estate had already vested in the wife before she was denominated trustee.

The majority fallaciously relies on *Dulin v. Moore,* 96 Tex. 135, 70 S.W. 742 (1902); and *Paton v. Baugh,* 265 S.W. 250 (Tex.

Civ.App.—Dallas 1924, no writ) because the wills: (1) create express trusts; (2) appoint named trustees to hold the property as trustees; and (3) vest legal title in the trustee. Additionally, in *Heironimus v. Tate*, 355 S.W.2d 76 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.), the court held that a trust was created because the will vested the legal estate in the executors and gave them full power of attorney to control and distribute the trust. Finally, *Najvar v. Vasek*, 564 S.W.2d 202 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) is not in point because the court held that no trust was created.

In conclusion, this court should follow *Beckham* and hold that the will of A.H. Lumpkin did not vest the legal estate in the residue of his property in his executors. The purely administrative powers created in the executors authorized an independent administration, thereby obviating probate formalities and were designed to aid in the orderly distribution of the residuary estate. *Chadwick v. Bristow*, 146 Tex. 481, 208 S.W.2d 888, 892 (1948).

I would hold that the will of A.H. Lumpkin did not authorize the appointment of the executors to serve as trustees of his estate and would thus reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

PHILLIPS, C.J., and WALLACE, J., join in this dissent.

## ON MOTION FOR REHEARING

WALLACE, Justice, dissenting.

I join in the dissenting opinion of Justice Ray. I write separately to emphasize my disagreement with another aspect of the majority opinion.

The court holds that when trust property has failed to produce a net income of at least 1% of its value for more than one year, the trustee is under a mandatory duty to sell it. Thus, with respect to such underproductive property, the trustee is not given any discretion whatsoever to retain that property. *Cf.* TEX.TRUST CODE ANN. § 113.056 (Vernon 1984). Under the court's construction of the Trust Code, a trustee is duty-bound to change the form of such an investment, notwithstanding the terms of the trust instrument or the fact that a reasonably prudent investor, considering *not only* the probable income from the investment *but also* the probable increase in value and the safety of the capital, might elect to retain the underproductive property. *Id.* The court errs in so holding.

Section 113.110 of the Trust Code merely provides a formula for allocating, between principal and income, the proceeds of a conversion of underproductive property, and does not even purport to determine when that conversion should be made. *Cf.* TEX.REV.CIV.STAT.ANN. art. 7425b–35 (Vernon 1960) (repealed 1984), codified as TEX.TRUST CODE § 113.110. This section is applicable if and only if each of the following preceding conditions exist:

(1) a sale of underproductive property has occurred producing net proceeds in excess of inventory value;

(2) the property has been underproductive for more than one year;

(3) the trustee was under a duty to change the investment to make the property productive; and

(4) the change was delayed but made before the principal was finally distributed.

TEX.TRUST CODE ANN. § 113.110(a).

This section defines what is meant by the term underproductive property, *see* § 113.-110(b), and establishes a presumption as to the date upon which the beneficiary's right to a portion of net proceeds accrued, *see* § 113.110(c). However, nothing in this section resolves the question as to whether a duty to change the form of a particular investment exists. This section explicitly states that it *"does not require a trustee to change the form of an investment."* *Id.*, § 113.110(e) (emphasis added). Moreover, the predecessor to this provision of the Trust Code, applicable at the time this alleged trust was created, provided that "the provisions in this section shall not be construed to require a trustee to change the form of an investment." TEX.REV.CIV.STAT.ANN. art. 7425b–35(f) (Vernon 1960) (repealed 1984), codified as TEX.TRUST CODE § 113.110(e). In short, the Legislature did not intend that this section should give rise to a duty to sell underproductive property. *See Bank v. Bank Lumber Co.*, 543 P.2d 588, 591 (Okla.Ct.App. 1975) (under similarly worded statute, trustee not required by the terms of the statute to sell unproductive property).

Whether Moursund was under a duty to sell the property at issue in this case must be determined by reference to § 113.056(a) of the Trust Code, which sets forth the standards for trust management and investment. The application of the standard set forth in this section to the conduct of

Moursund in this case would necessarily require the resolution of many fact questions. Thus, the only permissible disposition of this case is to remand to the trial court to determine whether Moursund complied with the applicable standard in retaining the property at issue. If Moursund's decision to retain the property was justifiable in light of § 113.056(a), then he was under no duty to sell and the income beneficiary has no rights under § 113.110. If Moursund's conduct does not comply with the applicable standards, then the trial court would be justified in ordering a sale and an allocation of proceeds pursuant to § 113.110. The majority errs in failing to require the trial court to conduct the appropriate inquiry, before it orders a sale and allocation.