# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00943-CV

---

### Olavie Hall, Appellant

### v.

### Estate of Donald Alfred Hall, Deceased, Appellee

---

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-06-085239, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Olavie Hall challenges the probate court's declaratory judgment interpreting the will distributing the property of the estate of Donald Alfred Hall (Estate). The probate court declared that the "Remaining Property" to be given to her in section 3.5 of Decedent Donald Alfred Hall's will (Will) includes only the property remaining after each specific gift described in sections 3.1, 3.2, and 3.3 is given effect. Appellant, Decedent's widow, contends that the bequest to her in section 3.5 instead includes all of the Estate other than the personal effects disposed of under the Will's Article 2. We will affirm the order.

### BACKGROUND

Independent Executor Donna Hall Keith (Executor) applied for probate of the Will and later filed an Application for Declaratory Judgment "as to who shall take what properties under

Article 3 of Decedent's will."[1]  The Will lists several real properties[2] and sets how they are to be distributed among Decedent's children and granddaughter (Descendants[3]) and his widow (Appellant).  Several Descendants and Appellant disputed the Application.

The probate court received minimal testimony at the hearing on the Application.  The probate court granted Executor's application for declaratory judgment, specifying that the property described in sections 3.1, 3.2, and 3.3 should be distributed to the Descendants named therein, with any Estate property remaining after that distributed to Appellant under section 3.5.

## APPLICABLE LAW

We review de novo a court's construction of unambiguous language in a will.  *Brewer v. Fountain*, 583 S.W.3d 871, 876 (Tex. App.—Houston [1st Dist.] 2019, no pet.).  When we construe a will, we focus on the testator's intent ascertained from language found within the four corners of the will.  *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *Matter of Est. of Kuyamjian*, No. 03-18-00257-CV, 2018 WL 3749834, at *3 (Tex. App.—Austin Aug. 8, 2018, pet. denied) (mem. op.).  We focus on the meaning of the words used, not on what the testator may have intended to write.  *Id*.  Courts must not redraft wills to vary or add provisions under the guise of construction of the language of the will to reach a presumed intent.  *Id*.  We

---

[1]  The events in this case took place over several years, but that time span is not raised as an issue on appeal.

[2]  The parties agreed that one of the properties listed in the inventory was sold, though they disputed when it was sold and how the proceeds were and should have been distributed. This appeal concerns only to whom Decedent devised the property; this appeal does not encompass any issues arising from the sale of that property.

[3]  In this opinion, "Descendants" refers only to those descendants named or referred to in the Will.

construe the will as a whole to give effect to the testator's intent. *Bergin v. Bergin*, 315 S.W.2d 943, 946 (Tex. 1958); *Barker v. Rosenthal*, 875 S.W.2d 779, 781 (Tex. App.—Houston [1st Dist.] 1994, no writ). The will should be construed to give effect to every part of it as long as the language is reasonably susceptible of that construction. *Perfect Union Lodge No. 10, A.F. & A.M. of San Antonio v. InterFirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988). A will should not be read to contradict itself if its apparent contradictions can be reconciled by bringing the various clauses together and deducing a consistent interpretation from the whole context. *Richardson v. Roberts*, No. 03-03-00077-CV, 2004 WL 1171674, at *2 (Tex. App.—Austin May 27, 2004, no pet.) (mem. op.) (citing *Jones' Unknown Heirs v. Dorchester*, 224 S.W. 596, 601 (Tex. App.—Amarillo 1920, no writ)).

Consistent with the definition of Remaining Property in the preface of Article 3 in the Will, the residuary estate is what is left after all debts and legal charges have been paid and other testamentary gifts have been satisfied. *See Rosen v. Wells Fargo Bank Tex., N.A.*, 114 S.W.3d 145, 150 (Tex. App.—Austin 2003, no pet.); *see also Shriner's Hosp. for Crippled Child. of Tex. v. Stahl*, 610 S.W.2d 147, 152 (Tex. 1980).

## DISCUSSION

The parties do not dispute the meaning of any words in the Will or contend that they are ambiguous.[4] Their dispute centers on what properties those unambiguous words put into the category "Remaining Property," which turns on the order in which the devises are made. The

---

[4] Executor initially urged in her Application for Declaratory Judgment that "[t]he will is ambiguous as to the meaning of Remaining Property." At the hearing on the Application, however, she revised her position to be that she did not think it ambiguous. The words themselves are clear, she asserted, but there were different interpretations of the Will.

key portions of the Will are as follows, omitting some lengthy terms not relevant to resolving the dispute here:

Article 2: <em>Specific Testamentary Gifts</em>

2.1. <u>Memorandum On Personal Effects</u>. I may leave a memorandum making one or more personal effects or cash gifts. [conditions concerning handwritten memorandum omitted]

2.2 <u>Division of Personal Effects</u>. To the extent not disposed of by the above, I give all of my remaining personal effects to my wife, if she survives me. If my wife does not survive me, I give my remaining personal effects to my children who survive me, in equal shares. However, if any child fails to survive me but leaves one or more descendants who survive me, I give the share that child would have received (if he or she had survived) per stirpes to his or her descendants who survive me. Any personal effects given to two or more individuals shall be divided among them as they may agree among themselves. If they cannot agree on the division within a reasonable time following my death, the Executor shall make the division for them.

Article 3: <em>Remaining Property</em>

After providing for payments of Debts, Expenses and Death Taxes as directed by Article 8, my Remaining Property (meaning the residue of my probate estate, including lapsed legacies and devises, but net of Debts and Expenses) shall be disposed of as provided in this article.

3.1. Each of my children; Delbert Royce Hall, Malcolm Hall, Kim Taylor, Kenneth Taylor, Janne Hall, Kathy Plummer, Sandy Hall, Donna Hall Keith along with my granddaughter Sharon Robinson shall equally share in those properties owned by me and located at: [list of real properties omitted]

3.2 Delbert Royce Hall and Malcolm Hall shall equally share in any interest that I may have in the property located at; 1195 Navasota: Lot 4 Blk 7OLT, 56 Div B, Robertson Geo L Subd.[5]

3.3 Kathy Plummer, Sandy Hall, Janne Hall, Sharon Robinson, and Donna Hall Keith shall equally share in any interest that I may have in the properties located at;

---

[5] The parties agreed that the property subject of section 3.2 had been sold and the proceeds distributed. That sale does not affect resolution of the dispute on appeal, though the parties agreed that the resolution of this dispute could require redistribution of the proceeds of that sale—an issue beyond the scope of this appeal.

5412 E. M.L.K. Jr. Blvd: Lot 1 A Blk C Resub of Lt 1-3 and Kathy Plummer, Sandy Hall, Janne Hall, and Donna Hall Keith shall equally share in any interest that I may have in the properties located at 6602 Sandshof Drive: Lot 1* Less N 1810 SQ FT Blk A Park Place.

3.4  In the event that my wife's death precedes my own; Kathy Plummer, Sandy Hall, Janne Hall, and Donna Hall Keith shall equally share in any interest that 1 may have in the property located at 4706 Oldfort Hill Drive.

3.5  <u>Disposition if My Wife Survives Me</u>.  If my wife survives me[,] I give my Remaining Property to my wife.

3.6  <u>Disposition If My Wife Does Not Survive Me but Descendants Survive Me</u>.  If my wife does not survive me but at least one child or other descendant of mine survives me, I give my Remaining Property to my children who survive me, in equal shares, subject to the provisions of Article 4 (providing for Child's Trusts for my children who are incapacitated).  However, if any child who fails to survive me leaves one or more descendants who survive me, the share that child would have received (if he or she had survived) shall be distributed per stirpes to his or her descendants.

. . . .

9.9  <u>Headings</u>.  The headings employed in this Will are for reference purposes only and shall not in any way affect the meaning or interpretation of the provisions of this Will.

The remainder of the Will does not contain provisions that are disputed or otherwise contribute to resolution of the dispute.

The proper distribution under Article 2 has not been disputed on the record presented.  Executor represented at the hearing that Decedent made no memorandum distributing personal effects and that Appellant survived him.  Accordingly, no personal effects passed under section 2.1, and all of Decedent's personal effects passed to Appellant under section 2.2.

Appellant contends that because she survived Decedent, the Will distributes the Estate property[6] remaining after the specific distributions under Article 2 to her. Because she survived Decedent, Appellant contends, sections 3.1-3.4 and 3.6 are not triggered. She argues that, had Decedent intended the bequests in sections 3.1-3.3 to operate when Appellant survived him, he would have devised them under Article 2, entitled "Specific Testamentary Gifts." Because he placed the distribution of the properties in sections 3.1-3.3 in Article 3, which deals with "Remaining Property," they must be part of the residuary estate and are contingent on Appellant predeceasing Decedent.

But nowhere does the Will state that sections 3.1-3.3 apply only if Appellant does not survive Decedent. Appellant's theory inserts a determination of the contents of the Remaining Property that is not supported by the Will, creates internal conflicts, and renders some language superfluous. Appellant would have us conclude that any property not devised in Article 2, entitled "Specific Testamentary Gifts," must be classified as Remaining Property because it is "what is left after all debts and legal charges have been paid and other testamentary gifts have been satisfied" under Article 3. But section 9.9 of the Will says that the Will's headings "shall not in any way affect the meaning or interpretation of the provisions of this Will." Critically, the Will does not state that any property not disposed of in Article 2 is "Remaining Property." Nor do sections 3.1-3.3 state that they are effective only if Appellant predeceases Decedent; section 3.4 is the sole provision distributing specified property that expressly applies only in that situation. Only if we

---

[6] Our opinion concerns only the share of the properties that Decedent was empowered to convey or bequeath. This opinion must not be interpreted to hold that Decedent conveyed full ownership of a property of which he only owned a community share or other partial interest.

6

ignore sections 3.1-3.3, do the properties listed therein pass as Remaining Property to Appellant. The text of the Will provides no basis to simply ignore sections 3.1-3.3.

The flaw in Appellant's theory is more apparent when we examine what would have happened under sections 3.2-3.4 using Appellant's proposed construction had she not survived Decedent. If all property not distributed under Article 2 must be classified as Remaining Property, then section 3.6 would have required that all Remaining Property go to Descendants in equal shares if Appellant had predeceased Decedent. But that distribution would have conflicted with the bequests in sections 3.2-3.4 that bequeath certain properties to select groups of Descendants.[7] The properties listed in sections 3.2-3.4 could not be distributed both equally among the Descendants as Remaining Property under 3.6 and also specifically as required by sections 3.2-3.4. Fundamentally, there is no basis in the language of the Will to treat the properties listed in sections 3.1-3.3 as Remaining Property under section 3.5 (when Appellant survives Decedent), but not under section 3.6 (when Appellant predeceases Decedent). [8]

The flaw is perhaps best crystalized when applied to section 3.4, which undisputedly concerns the homestead of Appellant and Decedent. Section 3.4 is the only bequest in Article 3 regarding a specific property that is effective only "[i]n the event that my wife's death precedes my own." If, as Appellant contends, all property not devised in Article 2 is classified as Remaining Property, then the quoted preface is unnecessary either (a) if she survives him because the property passes to her as Remaining Property under section 3.5, or (b) if Appellant predeceases

---

[7] We focus on these sections because they do not divide the property equally among all Descendants as section 3.1 does.

[8] Section 3.4 is excluded here because, on its own terms, it expressly applies only if Appellant predeceases Decedent.

him because the home is distributed among the descendants—either equally to all Descendants under section 3.6 or as specified under section 3.4.

Appellant's strained construction compares poorly with the probate court's resolution. Under the court's interpretation, Decedent's personal effects still go to Appellant under Article 2, but the devises under sections 3.1-3.4 are then given effect. The properties listed in 3.1-3.3 pass to the named individuals regardless of whether Appellant survives Decedent. Under its plain language, the devise in section 3.4 is triggered only if Appellant predeceases Decedent; when she survives him, section 3.4 is not activated, his share of the homestead stays in the Estate, is classified as Remaining Property, and passes to Appellant under section 3.5. Had Appellant predeceased Decedent, section 3.4 would have devised the property to the specified descendants, and other properties not devised under sections 3.1-3.4 would have passed equally to Descendants as Remaining Property.

Unlike Appellant's construction, the probate court's construction does not require the Executor to read sections 3.1-3.3 differently depending on whether Appellant survived Decedent. It would not have required the Executor to imply a qualifying phrase like "in the event that my wife's death precedes my own" onto sections 3.1-3.3; Decedent chose to use that phrase only in section 3.4. The probate court's interpretation does not set up a conflict between the equal-distribution provisions of section 3.6 and the specific devises of sections 3.1-3.4 in the event Appellant had predeceased Decedent. The probate court's interpretation allows the Executor to proceed methodically through the Will, distributing the personal effects under Article 2, the expressly listed properties under sections 3.1-3.3, the property under section 3.4 as directed there only if Appellant predeceased Decedent, then the Remaining Property to Appellant under section 3.5 if she survives Decedent and under section 3.6 if she predeceased him.

8

The probate court's interpretation complies with will-construction principles by implementing the testator's intent shown in the language used in the Will without adding or implying provisions. *See Lang*, 35 S.W.3d at 639. It gives effect to every part of the Will. *See Perfect Union*, 748 S.W.2d at 220. It is consistent with the fact that nothing in the will states that sections 3.1-3.3 apply only if Appellant predeceases Decedent. Even if the probate court's reading ignores the Will's headings by treating the devises in sections 3.1-3.4 like specific testamentary gifts despite their being under the "Remaining Property" heading, the Will itself instructs in section 9.9 that the headings shall not affect the meaning or interpretation of the provisions of the Will.

## CONCLUSION

We affirm the probate court's Order on Application for Declaratory Judgment.

_____
Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed: November 10, 2021

9