COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BROWNHAWK, L.P., | § | |
| | | No. 08-08-00190-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 448th Judicial District Court |
| | § | |
| MONTERREY HOMES, INC., | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2007-4136) |
| | § | |
| | § | |

## **O P I N I O N**

Brownhawk, L.P. ("Brownhawk) appeals a breach of contract judgment in favor of Monterrey Homes, Inc. (Monterrey") in the amount of $225,000, plus pre-judgment interest and attorney's fees. In three issues, Brownhawk challenges the trial court's findings of fact and conclusions of law and its attorney's fees award.

In September 2007, Brownhawk, a real estate developer, and Monterrey, a residential construction company, entered into an agreement for Monterrey to purchase an unimproved tract of land in El Paso County for development of the "Dos Palmas" subdivision. The parties signed an earnest money contract for the property on September 21, 2006 ("the contract"). Monterrey agreed to pay $2,250,000 for the property, and Brownhawk agreed to convey the property to Monterrey including certain improvements which were to be completed by Brownhawk, in a "good workman-like manner" on or before May 31, 2007. The improvements were specified as follows: (1) Brownhawk would complete all earthwork and grading, as specified by the subdivision plan; (2) install all sidewalks, streets with curbs, and gutters; and (3) install all

utilities as appropriate for a residential subdivision.

The contract contained a general termination or "default" provision which provided each party with the right to terminate the contract, seek specific performance, or seek other remedies as provided by law, for breach by the other party. In a separate section, the contract also gave Monterrey the right to terminate the contract and receive a full refund of the earnest money if Brownhawk failed to complete the improvements by the date specified. The contract also provided for the recovery of attorney's fees for the prevailing party should a default lead to litigation.

Final closing on the improved property was scheduled to take place "on or before 15 days after completion of development." Upon signing the agreement, Monterrey immediately deposited $25,000 into an escrow account. Later, in accordance with the contract, Monterrey deposited another $200,000 into escrow after the City of El Paso approved the preliminary subdivision plat. Over the next few months, the parties negotiated numerous changes to the configuration of the subdivision plat which required re-submission of the amended subdivision plat for the city's approval. The city approved the change, but required the parties to install a "drainage flume" to accommodate the reduction.

With the newly approved subdivision plans approved, the parties signed an amendment to the contract to further specify their responsibilities prior to closing. The amendment, signed April 30, 2007, changed the property description to reference the updated subdivision plans approved by the city, and made several changes to the closing provisions. First, the amendment extended Brownhawk's deadline for its initial construction obligations to May 30, 2007, with an automatic forty-five day extension if Brownhawk was unable to meet the amended deadline. The

amendment specified that closing would take place within fifteen days of "Completion of Development" and further specified that "Completion of Development" would occur when Brownhawk completed the following: (1) all earthwork and grading as required by the Developer/Builder plan (attached to the amendment as Exhibit A); (2) all streets with curbs and gutters and all sidewalks shown on the Developer/Builder Plan as "By Developer;" (3) all utilities for a residential subdivision as specified by the Developer/Builder Plan; and (4) all "By Developer" retaining walls according to the Developer/Builder Plan. Monterrey, in turn, took responsibility for construction of all rock or retaining walls between lots, all rock or retaining walls noted as "By Builder" on the Developer/Builder Plan, and construction of sidewalks along Dos Palmas Drive, also specified as "By Builder." Monterrey agreed it was responsible for completing the "Builder's Improvements" even if they were not completed by closing, and further agreed that closing would not be delayed in any way by its failure to complete those improvements. Finally, the amendment provides an additional termination provision for Monterrey. In the event Brownhawk was unable to complete its improvements by the extended completion date, Monterrey could terminate the contract by written notice to Brownhawk, or negotiate another extension. If Monterrey chose to terminate the contract, it was entitled to a refund of any remaining escrow funds, subject only to Monterrey's decision to exercise its right to purchase certain lots prior to closing (Monterrey's "Early Purchase Right"). The amendment does not specifically reference the drainage flume construction.

The parties never closed on the property. On September 12, 2007, Brownhawk filed suit against Monterrey for breach of contract, alleging that despite the completion of "virtually all" of its own construction obligations, Monterrey failed to complete construction of the "By Builder"

projects, and prevented Brownhawk from securing a final inspection from the City of El Paso. Monterrey counter-claimed with its own breach of contract claim, alleging that Brownhawk failed to meet the extended completion deadline provided by the contract amendment, and that it had exercised its right to terminate the agreement by written notice sent to Brownhawk on August 16, 2007.

The case was tried to the bench beginning on April 21, 2008. On April 30, 2008, at the close of evidence, the trial court ruled in favor of Monterrey on its counterclaim and awarded $225,000 plus interest and attorney's fees. The trial court also awarded Monterrey $49,450 for attorney's fees, with additional contingent awards in the event of Brownhawk's unsuccessful appeals to this Court and the Texas Supreme Court. Following entry of the judgment, the court entered findings of fact and conclusions of law.

The following findings are key to the disposition of this appeal:

5. Time was of the essence under the Contract.

6. [Pursuant to the Amendment] . . . Brownhawk was required to complete all the enumerated improvements no later than August 14, 2007 if the automatic extension was utilized. Time was again of the essence pursuant to the Contract Amendment.

.          .          .

8. [As of August 16, 2007] Brownhawk had not completed all the earth work and grading, nor had Brownhawk completed all the sidewalks, curbs and gutters.

.          .          .

10. [O]n August 14, 2007 the subdivision could not have passed final inspection and would not have been accepted by the City of El Paso.

.          .          .

-4-

13.	In a letter dated August 16, 2007, Monterrey sent notice to Brownhawk electing to terminate the Contract. As part of the notice Monterrey demanded that Brownhawk release the escrowed amount of $225,000. . . . Brownhawk refused.

14.	Brownhawk alleged that pursuant to revised plans that were filed with the City that Monterrey was supposed to construct a flume for drainage prior to the subdivision final inspection. Such revisions to the plan, however, were added after the plans to the Amendment were signed and without Monterrey's permission or knowledge. When confronted with this revision, a representative of Brownhawk agreed that Brownhawk would follow the original plans attached to the Amendment.

15.	Brownhawk breached the Contract when it failed to return the escrow money to Monterrey.

16.	Monterrey did not breach the contract.

Brownhawk has appealed the court's judgment, and in its first two issues presented to this Court, Brownhawk challenges the legal and factual sufficiency of the evidence supporting findings fourteen, fifteen, and sixteen.[1] In its third issue on appeal, Brownhawk challenges the legal and factual sufficiency of the trial court's attorney's fees award. We will address Issue Two first.

Brownhawk presents Issue Two as a challenge to the legal and factual sufficiency of the evidence supporting the trial court's fifteenth and sixteenth findings, i.e., that Brownhawk did breach the contract, and that Monterrey did not. Brownhawk contends that Monterrey's failure to construct the "by builder" improvements, including the "drainage flume" constituted a material breach of the contract, thereby excusing Brownhawk's failure to complete its performance. Brownhawk concludes, therefore, that the evidence is legally and factually insufficient to support

---

[1] All of the trial court's findings were designated as both findings of fact and conclusions of law.

-5-

the trial court's finding that it breached the agreement, and Monterrey did not.[2] Because the record demonstrates that the operative material breach was Brownhawk's failure to complete its construction obligations by the extended completion deadline provided by the contract amendment, we disagree.

A trial court's findings of fact are reviewable for legal and factual sufficiency under the same standards of review used to review the sufficiency of the evidence supporting a jury's findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The standard and scope of review applicable to a particular sufficiency challenge depends on whether or not the appellant bore the burden of proof for the challenged issue at trial. *See Quick v. Plastic Solutions of Texas, Inc.*, 270 S.W.3d 173, 181 (Tex.App.--El Paso, no pet.). Regardless of a party's designation of a sufficiency point, we are required to review each attack in its proper context. *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 113-14 (Tex. 1976).

Brownhawk's attack on finding sixteen (Monterrey did not breach), represents an attack on a finding for which Brownhawk had the burden of proof at trial. *See Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex.App.--El Paso 2000, no pet.)(noting the non-claimant's breach is an essential element of a breach of contract cause of action). We will review the sufficiency of the evidence supporting finding sixteen under the "matter of law" and "against the great weight and preponderance" standards. *See Raw Hide Oil & Gas, Inc. v. Maxus*

---

[2] Both parties address this issue as one of legal and factual sufficiency, and we will address it as it is presented. However, we note that Brownhawk's arguments are premised, primarily, on its interpretation of the contract and the amendment. Generally such arguments are made in reference to a question of contract interpretation, which is a question of law, subject to *de novo* review, rather than an issue evidentiary sufficiency. *See Fasken Land & Minerals, Ltd. v. Occidental Permian, Ltd.*, 225 S.W.3d 577, 588 (Tex.App.--El Paso 2005, pet. denied).

*Exploration Co.*, 766 S.W.2d 264, 275-76 (Tex.App.--Amarillo 1988, writ denied).  To sustain a "matter of law" challenge, the reviewing court must conclude both that there is no evidence to support the adverse finding and that the contrary proposition is established as a matter of law. *See Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co., Inc.*, 223 S.W.3d 1, 13-4 (Tex.App.--El Paso 2005, pet. denied).  A matter of law point will only be sustained if both analytical steps are satisfied. *Id*.

When a party with the burden of proof challenges the factual sufficiency of an adverse finding, the appropriate complaint is that the finding is "against the great weight and preponderance of the evidence." *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex.App.--El Paso 2000, no pet.).  Such a challenge will be sustained only if the reviewing court concludes the non-finding is against the great weight and preponderance of the evidence. *Ames v. Ames*, 776 S.W.2d 154, 158 (Tex. 1989).  The fact finder's determination should be upheld if there is some probative evidence to support it, and the contrary evidence does not outweigh the supporting evidence to such a degree that the finding "shocks the conscious," or constitutes a manifest injustice. *See Kimsey v. Kimsey*, 965 S.W.2d 690, 699-700 (Tex.App.--El Paso 1998, pet. denied).  The reviewing court will consider and weigh all the evidence, and must remain mindful of the deference owed to the fact finder's resolution of issues related to the weight and credibility attributed to witness testimony. *See Tate*, 55 S.W.3d at 5; *Marrs & Smith P'ship*, 223 S.W.3d at 14.

With respect to finding number fifteen (Brownhawk breached), Issue Two raises a "no evidence" legal sufficiency challenge, and an "insufficient evidence" factual sufficiency challenge. *See Raw Hide Oil & Gas*, 766 S.W.2d at 275-76.  Under the "no evidence" standard

the court's review is generally limited to the evidence and inferences in support of the finding, and is conducted in the light most favorable to the finding. *See Kimsey*, 965 S.W.2d at 699-700. Such a challenge will be sustained only if the reviewing court concludes there is no more than a "mere scintilla" of evidence to support the finding. *See id*. at 700. An "insufficient evidence" challenge will be sustained only if the supporting evidence is so weak that the finding is clearly wrong and manifestly unjust. *See Rawhide Oil & Gas*, 766 S.W.2d at 276. The scope of review includes all the evidence, both in favor of and contrary to the finding. *Kimsey*, 965 S.W.2d at 700.

Based on its singular argument that Monterrey materially breached the contract by failing to complete its construction projects, Brownhawk concludes its own breach was excused, and that findings fifteen and sixteen are without evidentiary support. In essence, this argument is an attack on the trial court's interpretation of the parties obligations under the contract and the amendment. As such, the language of the instruments themselves will be the central focus of our analysis. *See Mustang Pipeline Co. Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199-200 (Tex. 2004).

When a contracting party fails to perform a material obligation, the other party's subsequent failure to perform is excused. *See Driver Pipeline Co., Inc.*, 134 S.W.3d at 199-200. In breach of contract disputes involving breach on both sides of an agreement, the fact finder must often determine not only whether the parties breached their agreement, but also who breached first. *See Driver Pipeline Co., Inc.*, 134 S.W.2d at 199-200 (in cases where both parties are in breach of their agreement, the proper inquiry is not whether each party materially breached the agreement, but which material breach occurred first). This is because the chronology of the

material breaches determines which party is released from its obligations, and which party is liable for contract damages. *See id*.

The terms of the original contract defined three separate dates defining the parties' performance. First, the contract required the "closing date" to take place on or before fifteen days after the completion of development. The closing date was only to take place after Brownhawk completed the improvements specified in the "Special Provisions" paragraph. In turn, the parties originally agreed the "completion date" for those improvements was May, 31, 2007. There is no dispute that Brownhawk did not meet the first completion date. The parties then agreed, by amendment, to extend Brownhawk's completion deadline to June 30, 2007, and included an additional automatic extension to August 14, 2007. Again the parties agreed that closing was dependant on completion of development, and completion of development was defined as completion of Brownhawk's improvements. Monterrey was given the option to terminate the agreement if Brownhawk was not able to complete the improvements by the amended completion deadline.

Monterrey attempted to exercise its right to terminate the contract on August 16, 2007. According to the contract terms, Brownhawk was obligated to return Monterrey's earnest money at that point if it had not completed its improvements. It is important to note that Brownhawk does not contend that the evidence establishes its full performance at the time of the attempted termination. Instead, Brownhawk argues that its obligation to return the escrow deposits was excused because Monterrey had not constructed its "By Builder" improvements. However, as discussed above, the contract specified that Monterrey's improvements were due, not by the "completion deadline" but by the closing date. To the extent Monterrey was obligated to

complete the builder improvements, and assuming for the sake of argument that Monterrey was required to complete the drainage fume, Monterrey had another fifteen days before it breached the contract.

In sum, Brownhawk's materially failed to perform in response to Monterrey's termination request at a time when Monterrey had yet to commit a material breach. Therefore, Brownhawk's breach was not excused by Monterrey's non-performance. *See Driver Pipeline Co., Inc.*, 134 S.W.2d at 199-200. The evidence was not legally or factually insufficient to support findings fifteen and sixteen. Issue Two is overruled.

In Issue One, Brownhawk challenges finding of fact and conclusion of law number fourteen, in which the trial court made several determinations. To paraphrase, the court concluded: (1) Brownhawk alleged that Monterrey was obligated to construct a drainage flume prior to final inspection of the subdivision pursuant to revised plans which were filed with the city; (2) the drainage flume revisions were added to the subdivision plan after the contract amendment was signed; (3) the revisions were made without Monterrey's knowledge; and (4) Brownhawk agreed that it would follow the plans as they existed when the amendment was signed. Brownhawk concludes that because the subdivision plans attached to the amendment required Monterrey to construct its improvements in compliance with applicable building codes and ordinances, and because the City of El Paso requires all drainage structures to be completed before final inspection, the evidence was legally and factually insufficient to support finding fourteen. We disagree.

Given our analysis of the relationship between the contract terms and the chronology of the parties' respective breaches in Issue Two, even if we were to assume for the sake of argument

-10-

that the evidence was legally and factually insufficient to support these findings, Brownhawk fails to explain how such a conclusion could serve as a basis for reversal. Accordingly, Issue One is also overruled.

In Issue Three, Brownhawk contends the evidence is legally and factually insufficient to support the trial court's attorney's fees award. Brownhawk argues that because the record does not contain evidence to support the court's decision to award $49,450 in fees, the trial court abused its discretion by entering judgment on that amount. Generally, the amount of money awarded as attorney's fees rests within the sound discretion of the court. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). However, to determine whether the award constituted an abuse of discretion, the reviewing court must first determine whether the trial court had sufficient evidence before it upon which it could exercise its discretion. *See Alford v. Johnston*, 224 S.W.3d 291, 298 (Tex.App.--El Paso 2005, pet. denied). An award which is not supported by evidence is arbitrary and constitutes an abuse of discretion. *See F-Star Socorro. L.P. v. City of El Paso*, 281 S.W.3d 103, 106 (Tex.App.--El Paso 2008, no pet.). The party seeking attorney's fees bears the burden to put forth evidence regarding its right to recover such damages, as well as the reasonableness and necessity of the amount of the fee. *See Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 751 (Tex.App.--Houston [14th Dist.] 2005, no pet.).

The trial court considered the issue of attorney's fees after the conclusion of the trial on the merits. Brownhawk argues the appellate record is devoid of evidence to support the court's award. However, by supplemental clerk's record Monterrey has made an affidavit by its attorney part of the appellate record, and asks this Court to consider the affidavit as evidence supporting court's award. Monterrey represents the affidavit was presented to the trial court prior to entry of

judgment, but was mistakenly omitted from the record until May 2009. The affidavit indicates it was sworn to on May 6, 2008, and the attached certificate of service states it was sent to Brownhawk's counsel in May 2008. The supplement also contains a letter from Monterrey's attorney to the trial court judge dated May 6, 2008, indicating Monterrey's attorney's fee affidavit was enclosed with the letter. The original clerk's record provides further support for Monterrey's position in the form of Brownhawk's objections to Monterrey's "Request For Attorneys' Fees," which was supported by an affidavit by Brownhawk's attorney. The response and attached affidavit are file stamped May 21, 2008. Based on the supplemental clerk's record, and Brownhawk's responsive filings contained in the original clerk's record, we conclude Monterrey's attorney's fee affidavit was before the court when it entered its judgment on May 22, 2008, and may be considered as evidence in support of the award.

The affidavit itself provides Mr. Johnston's qualifications and experience as a litigator in El Paso, states his hourly rate for the case was $225, and concludes that this is a reasonable rate in El Paso for the legal services he provided. The affidavit includes a summary delineating the number of hours spent in each phase of the litigation, as well as an estimation of the number of hours which would be required should the case be appealed. According to the summary, Mr. Johnston spent 217 hours in preparation for trial, which multiplied by his stated hourly rate represented $47,200 of the requested fee. The summary also states he spent ten hours related to post-trial matters in the trial court, and requests an additional $2,250 for those efforts. In the event of an appeal to this Court, Mr. Johnston anticipated seventy-five hours would be necessary to prosecute the appeal, and requested a contingent award of $16,875. Similar contingency awards were requested in the event a petition for discretionary review was filed in the Texas

-12-

Supreme Court, and in the event that petition was granted. Brownhawk objected to the affidavit only on the basis that approximation of hours needed to pursue an appeal was too high.

Based on this record, we conclude the trial court's award was supported by sufficient evidence, and that the court did not abuse its discretion in making the award. Issue Three is overruled.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.


October 27, 2010
                                    DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Bramblett, Judge
Bramblett, Judge (Sitting by Assignment)