

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-22-00736-CV

Victor **HILDERBRAN**, Homer Ray Smith, Ramon Castro, Dean Paret, and Brad Bradley,
Appellants

v.

**TEXAS SOUTHWEST COUNCIL, INC., BOY SCOUTS OF AMERICA**,
Appellee

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2022-07-34431-CV
Honorable Donna S. Rayes, Judge Presiding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:      Patricia O. Alvarez, Justice
             Beth Watkins, Justice
             Lori I. Valenzuela, Justice

Delivered and Filed: June 26, 2024

AFFIRMED

Appellants sued for an accounting and on-site inspections of land their predecessor trustees

received in trust in 1930 but conveyed in 1943.  The 1943 Deed grantee's successor moved to

dismiss the causes of action.  The trial court granted the motion, dismissed the causes, and awarded

attorney's fees.  For the reasons given below, we affirm the trial court's order.

---

[1] The Honorable Camile G. DuBose is the presiding judge of the 38th Judicial District Court.  The Honorable Donna S. Rayes, sitting by assignment, signed the dismissal order.

## BACKGROUND

This appeal is from the trial court's order granting a motion to dismiss Appellants' causes of action under Texas Rule of Civil Procedure 91a. The appellants' central issues turn on the construction of two deeds: the 1930 Deed and the 1943 Deed. The 1943 Deed is of primary interest, and it quotes the 1930 Deed.

### A.    1930 Deed

In 1930, a group of property owners in Edwards County conveyed about 300 acres of land in trust to five trustees. The property was "to be held in trust forever, by the said Trustees and their successors upon the following terms and conditions."[2] (emphasis removed).

The terms and conditions were presented in four paragraphs titled FIRST, SECOND, THIRD, and FOURTH, followed by the date, the grantors' names, and a notarization for each grantor.

They required the property "to be held by the said Trustees for the use and benefit of the several troops of Boy Scouts of America [in] the Southwest Texas Council." They authorized the trustees to "sell or lease said property upon such terms or conditions as they deem best." And if the "property shall cease to be used for the purposes herein set forth, or the said Southwest Texas Council, Boy Scouts of America, shall cease to function," then the property would be "controlled, supervised and managed by the then existing Board of Trustees."

---

[2] The four paragraphs are recited in full in our earlier opinion. *Hilderbran v. Tex. Sw. Council, Inc., Boy Scouts of Am.*, No. 04-20-00112-CV, 2021 WL 2211353, at *1–2 (Tex. App.—San Antonio June 2, 2021, no pet.) (mem. op.).

**B.      1943 Deed**

In 1943, after the Southwest Texas Council ceased to function, the five then-existing trustees conveyed the property by deed in fee simple on a condition subsequent to what is now known as Texas Southwest Council, Inc., Boy Scouts of America (the Council).[3]

The 1943 Deed repeated verbatim the FIRST, SECOND, THIRD, and FOURTH paragraphs of the 1930 Deed, and it added other provisions. It expressly conditioned the grant on the Council's agreement to "perform and carry out the foregoing terms and conditions relating to the use of the said lands for the . . . Boys Scouts of America [and requires] that the properties conveyed [be called] Camp Fawcett." It also required the Council "to carry out and perform all the terms, conditions and obligations imposed upon us as trustees under [the 1930 Deed]."

**C.      Previous Suit**

In November 2017, the successor trustees (Trustees) brought a trespass to try title suit against the Council. *Hilderbran v. Tex. Sw. Council, Inc., Boy Scouts of Am.*, No. 04-20-00112-CV, 2021 WL 2211353, at *3 (Tex. App.—San Antonio June 2, 2021, no pet.) (mem. op).

In response, the Council asserted the Trustees were not properly appointed and lacked standing, their action was barred by limitations, and in the alternative, that it held title to Camp Fawcett in fee simple by adverse possession. *Id.*

The parties filed competing motions for traditional and no-evidence summary judgment. *Id.* The trial court ruled on the motions, and the Trustees appealed. *Id.* at 4.

We concluded that the Trustees were properly appointed and had standing to sue, the Council's adverse possession claim failed, and the 1943 Deed conveyed Camp Fawcett to the Council in fee simple subject to a condition subsequent. *Id.* at 18.

---

[3] In 1943, the Council was known as the Concho Valley Council, Inc., Boy Scouts of America.

**D.      Present Suit**

In July 2022, the Trustees again sued the Council.  Their First Amended Original Petition stated causes of action for accounting, demand for on-site inspection, and attorney's fees, based on Texas Trust Code sections 114.001 (Liability of Trustee to Beneficiary) and 113.151 (Demand for Accounting).  *See* TEX. PROP. CODE ANN. §§ 113.151, 114.001.  The petition attached as exhibits the 1930 Deed and the 1943 Deed.  *See* TEX. R. CIV. P. 91a.6 (referencing "pleading exhibits permitted by Rule 59"); *Davis v. Homeowners of Am. Ins. Co.*, No. 05-21-00092-CV, 2023 WL 3735115, at *5 (Tex. App.—Dallas May 31, 2023, no pet.) (mem. op.).

The Council moved to dismiss the Trustees' causes of action; it alleged the causes had no basis in law or fact.  *See* TEX. R. CIV. P. 91a.1.  The Trustees amended their petition, and the trial court held a hearing on the motion.  The trial court granted the motion, dismissed all the Trustees' claims, and awarded the Council its attorney's fees.

**E.      Trustees Appeal**

On appeal, the Trustees argue that the trial court erred by dismissing their causes of action because the Trust Code provides that "[a]n interested person may file suit to compel the trustee to account to the interested person." TEX. PROP. CODE ANN. § 113.151(b).  They insist they may sue the Council for an accounting and inspections because they are interested persons, the 1943 Deed conveyed the property to the Council in trust, the Council agreed to perform the duties of a trustee, and the Council is, in effect, a trustee of the trust estate.  They also contend that the trial court's award of attorney's fees was not supported by evidence.

The Council argues that the 1943 Deed did not convey the property in trust, and no deed provision converts the Council into a trustee.  Thus, the Trust Code provisions do not apply, the trial court properly dismissed the Trustees' causes of action, and there was evidence to support the trial court's award of attorney's fees.

Before we address the Trustees' issues, we briefly recite the applicable law for construing a written instrument and reviewing a motion to dismiss under Rule 91a.

### RULE 91A

"[A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1; *accord Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020). "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Bethel*, 595 S.W.3d at 654 (quoting TEX. R. CIV. P. 91a.1).

"In ruling on a Rule 91a motion to dismiss, a court may not consider evidence but 'must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits.'" *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) (quoting TEX. R. CIV. P. 91a.6); *accord Bethel*, 595 S.W.3d at 654.

For a cause of action challenged as having no basis in law, "[d]ismissal is appropriate under Rule 91a 'if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.'" *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam) (quoting TEX. R. CIV. P. 91a.1).

"We review the merits of a Rule 91a motion de novo." *Bethel*, 595 S.W.3d at 654; *accord Sanchez*, 494 S.W.3d at 724

### DEED CONSTRUCTION

"The question of whether a [deed] is ambiguous is a question of law for the court." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

"The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the

'four corners' rule." *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *accord Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). We must "(1) . . . focus on the intent of the parties, expressed by the language within the four corners of the deed, and (2) harmoniz[e] all parts of an instrument, even if particular parts appear contradictory or inconsistent." *Wenske*, 521 S.W.3d at 795; *see Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986).

"If [a deed] is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and [we] will construe the [deed] as a matter of law." *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *accord Wenske*, 521 S.W.3d at 794.

### 1943 DEED PROVISIONS

The 1943 Deed begins with an introductory paragraph that describes the 1930 Deed, its original grantee trustees, and the property that was granted in trust to the 1930 Deed grantees as trustees "upon the following terms and conditions as stated in [the 1930 Deed]." It then includes verbatim the FIRST through FOURTH paragraphs from the 1930 Deed.

Immediately following the FOURTH paragraph, the 1943 Deed contains these four additional paragraphs:

> AND WHEREAS said Trustees deem it advisable to grant and lease said property to the Concho Valley Council, Inc., Boy Scouts of America, on condition that such Council and its successors shall perform and carry out the foregoing terms and conditions relating to the use of the said lands for the several troops of the Boy Scouts of America now located and to be located within the jurisdiction of what has been heretofore termed the Southwest Texas Council, Boy Scouts of America, and on the further condition that the properties conveyed shall be operated, managed and controlled under the name of Camp Fawcett.
>
> NOW, THEREFORE, for and in consideration of the sum of $10.00 and the further consideration of the agreement upon the part of the said Concho Valley Council, Inc., to carry out and perform all the terms, conditions and obligations imposed upon us as trustees under the above mentioned conveyance, recorded in Volume 28, page 574, we the undersigned Trustees, do grant, lease, sell and convey unto the said Concho Valley Council, Inc., Boy Scouts of America, and its successors, the 300 acres of land acquired under said conveyance, and all other properties subsequently acquired under said

conveyance, and all other properties subsequently acquired in connection with and as part of such trust estate.

The object and purpose of this conveyance is to vest in such Council all the rights and privileges enjoyed by us as Trustees, believing that such Council will be in a position to administer, manage and control the trust estate for the use and benefit of the beneficiaries, thereof more advantageously and in a better way and manner than we ourselves can do it.

Should the said Council, its successor or successors, at any time discontinue the management and control of the properties here conveyed for the use and benefit of the beneficiaries named in the original trust conveyance or in this instrument, then in that event all rights, titles and interest accruing to such Council, its successor or successors, under this conveyance shall be forfeited and all such rights and titles revert to the grantors and their successors upon written notice being given by them to the grantee, its successor or successors of their intention to declare such forfeiture and re-acquire and re-take possession of the said trust estate.

The tenth and final paragraph, which lists the then-serving successor trustees, is followed by the date and the grantors' names.

### IS THE COUNCIL A TRUSTEE?

The Trustees argue each of their causes of action has a basis in law because their pleadings and exhibits show the Council is a trustee subject to the Trust Code, the Trust Code expressly authorizes an interested person to request an accounting, and on-site inspections are necessary to fulfill their duties as trustees. Their assertion that the Council is a trustee rests on two grounds.

First, the 1943 Deed created an express trust and conveyed the property to the Council in trust to hold as a trustee.

Second, the Council agreed to perform the duties of a trustee.

### A. Property Conveyed in Trust

We begin with the Trustees' argument that the 1943 Deed created an express trust.

*1.      Creating an Express Trust*

"A trust may be created by . . . a property owner's declaration that the owner holds the property as trustee for another person . . . ."  TEX. PROP. CODE ANN. § 112.001(1); *accord Sarah v. Primarily Primates, Inc.*, 255 S.W.3d 132, 143 (Tex. App.—San Antonio 2008, pet. denied).

"To create a trust by a written instrument, the beneficiary, the res, and the trust purpose must be identified."  *Sarah*, 255 S.W.3d at 144 (quoting *Perfect Union Lodge No. 10, A.F. & A.M., of San Antonio v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988)).

But "[a] trust is created only if the settlor manifests an intention to create a trust."  TEX. PROP. CODE ANN. § 112.002; *see Perfect Union*, 748 S.W.2d at 220 (reasonably clear intent).

*2.      Express Trust Language*

The Trustees argue the 1943 Deed creates an express trust because it designates a beneficiary, identifies the property, and describes the trust's purpose.  *Cf. Sarah*, 255 S.W.3d at 144 (beneficiaries, res, trust purpose).

The beneficiaries are "several troops of Boy Scouts of America [in] the Southwest Texas Council."

The res is the "the 300 acres of land acquired under said conveyance, and all other properties subsequently acquired under said conveyance, and all other properties subsequently acquired in connection with and as part of such trust estate."

The trust's purpose is to set aside property "for the use and benefit of the several troops of Boy Scouts of America which are now under the jurisdiction of the Southwest Texas Council, Boy Scouts of America."

But by "a careful and detailed examination of the [1943 Deed] in its entirety," it is apparent that these descriptions of the beneficiaries, the trust estate, and the trust purpose are references to the 1930 Deed's trust language.  *See Wenske*, 521 S.W.3d at 795.  These references, read in context

of the entire 1943 Deed, do not create a separate trust, nor do the additional paragraphs: AND WHEREAS; NOW, THEREFORE; Object and Purpose; and Should the Said Council.

*3.      AND WHEREAS Paragraph*

In the AND WHEREAS paragraph, the 1943 trustees "deem[ed] it advisable to grant and lease said property to the [Council]."  They could have decided to convey the property in trust to the Council to hold as a trustee, but this paragraph shows they chose to grant and lease it—not convey it in trust.

Unlike the 1930 Deed, this paragraph does not convey the property in trust to the Council as a trustee.  It creates the condition that the Council must comply with the FIRST through FOURTH paragraphs (repeated from the 1930 Deed), but it lacks language that would reasonably clearly show the 1943 trustees intended to convey the property in trust to the Council as a trustee. *Cf. Perfect Union*, 748 S.W.2d at 220.

*4.      NOW, THEREFORE Paragraph*

The NOW, THEREFORE paragraph uses the term "such trust estate."  The Trustees argue that the term shows the 1943 trustees' intent to convey the property to the Council in trust, but the term does not do so when read in context.

The NOW, THEREFORE paragraph, like others in the 1943 Deed, repeatedly refers to the 1930 Deed.  It describes the 1930 Deed as "the above[-]mentioned conveyance," it describes the property conveyed in trust as "the 300 acres of land acquired under said conveyance," and it ends by including in the property conveyed by trust "all other properties subsequently acquired in connection with and as part of such trust estate."

The terms "above[-]mentioned conveyance" and "said conveyance" unquestionably refer to the 1930 Deed.  Consistent with that convention, "such trust estate" also refers to the 1930 Deed;

that term is used in the provision for any after-acquired property that, by 1943, had become part of the 1930 Deed's trust estate.

To test our assumption that "such trust estate" refers to the 1930 Deed's trust property, we can make these substitutions to see whether they are (1) consistent with or (2) alter the paragraph's meaning. *Cf. Washington v. Associated Builders & Contractors of S. Tex. Inc.*, 621 S.W.3d 305, 315 (Tex. App.—San Antonio 2021, no pet.) (testing a textual substitution in construing a statute). After making the substitutions, the NOW, THEREFORE paragraph reads as follows:

```
     NOW, THEREFORE, for and in consideration of the sum of $10.00
and the further consideration of the agreement upon the part of the
said Concho Valley Council, Inc., to carry out and perform all the
terms, conditions and obligations imposed upon us as trustees under
the above mentioned conveyance the 1930 Deed, recorded in Volume
28, page 574, we the undersigned Trustees, do grant, lease, sell
and convey unto the said Concho Valley Council, Inc., Boy Scouts of
America, and its successors, the 300 acres of land acquired under
said conveyance the 1930 Deed, and all other properties subsequently
acquired under said conveyance the 1930 Deed, and all other
properties subsequently acquired in connection with and as part of
such trust estate the 1930 Deed's trust estate.
```

Considering the paragraph with these substitutions, we conclude that the term "such trust estate" in the NOW, THEREFORE paragraph refers to the 1930 Deed's trust estate. *Cf. id.*

Further, the conveying language says the 1943 trustees "do grant, sell and convey unto [the Council] and its successors, the 300 acres of land" and any after-acquired property.

Unlike the language in the 1930 Deed, this NOW, THEREFORE paragraph does not expressly convey the land in trust to the Council to hold as trustees nor does it have language that reasonably clearly expresses such an intent. *Cf. Perfect Union*, 748 S.W.2d at 220 (requiring that "the intent to create a trust [be] reasonably clear from the terms of the [instrument]" to imply a trust).

*5.      The Object and Purpose Paragraph*

The Object and Purpose paragraph explains that "[t]he object and purpose of this conveyance is to vest in such Council all the rights and privileges enjoyed by us as Trustees." The 1943 trustees explain that the Council will be better able to manage "the trust estate" that they are conveying to it.

The paragraph notes the Council will be vested with the "rights and privileges enjoyed by us as Trustees," but it does not impose the duties and responsibilities of the 1943 trustees, nor does it describe the property as being conveyed in trust to the Council to hold as a trustee.

*6.      Should the Said Council Paragraph*

The Should the said Council paragraph refers to the 1930 Deed as "the original trust conveyance" and itself, the 1943 Deed, as "this instrument."[4]

If the 1943 Deed was intended to convey the property to the Council in trust, it could have referred to itself as another, a second, or a subsequent trust conveyance, but it did not. Instead, it used "this instrument," which was consistent with a traditional deed to convey property to a grantee in fee simple (on a condition subsequent) rather than in trust to hold as a trustee. This paragraph's language does not make it reasonably clear that the grantors—the 1943 trustees—intended to convey the property in trust. *Cf. Perfect Union*, 748 S.W.2d at 220 (requiring that "the intent to create a trust [be] reasonably clear from the terms of the [instrument]" to imply a trust).

*7.      Property Not Conveyed in Trust*

Having reviewed the 1943 Deed as a whole, we conclude it does not convey the property in trust to the Council to hold as a trustee. "It is true that technical words of expression are not essential for the creation of a trust." *Sarah*, 255 S.W.3d at 145 (citing *Perfect Union*, 748 S.W.2d

---

[4] The tenth paragraph in the 1943 Deed also refers to the deed as "this instrument."

at 220). But considered as a whole, *see Wenske*, 521 S.W.3d at 795, the 1943 Deed does not create an express trust or show a reasonably clear intent to create a second, implied trust to convey the property to the Council in trust as a trustee, *cf. Perfect Union*, 748 S.W.2d at 220.

## B.      Agreement to Perform Trustee Duties

The Trustees' second argument is that because the Council agreed to perform the duties of a trustee, it became a co-trustee of the trust estate.[5] The Trustees rely on the language in the AND WHEREAS and NOW, THEREFORE paragraphs.

The AND WHEREAS paragraph expressly conditioned the grant on the Council's agreement to "perform and carry out the foregoing terms and conditions relating to the use of the said lands for the . . . Boys Scouts of America [and requires] that the properties conveyed [be called] Camp Fawcett."

The NOW, THEREFORE paragraph required the Council "to carry out and perform all the terms, conditions and obligations imposed upon us as trustees under [the 1930 Deed]."

These provisions in the AND WHEREAS and NOW, THEREFORE paragraphs require the Council to comply with the FIRST through FOURTH paragraphs in the 1943 Deed—that were repeated from the 1930 Deed. The only applicable requirements in the FIRST through FOURTH paragraphs are for the property to be used for the benefit of the Boy Scouts and to be called and run as Camp Fawcett. But nothing in the FIRST through FOURTH paragraphs requires the Council to *become* a trustee—and thus be subject to any applicable Trust Code provisions—and the Trustees do not cite any authority to support this argument.

Further, the FIRST through FOURTH paragraphs do not require the Council to render an accounting or permit on-site inspections.

---

[5] At the hearing on the Council's Rule 91a motion, the Trustees stated "we're not alleging that [the Council is] a trustee" and "the Council is neither a trustee nor a beneficiary."

Considered in context, *see Wenske*, 521 S.W.3d at 795, these cited provisions do not require the Council to *become* a trustee—and thereby be subject to Trust Code requirements—nor do they impose accounting and inspection duties on the Council, *cf. Perfect Union*, 748 S.W.2d at 220.

## C.    Council is Not a Trustee

The grounds the Trustees rely on do not support their argument that the Council is a trustee for the property.  The 1943 Deed did not convey the property in trust to the Council to hold as a trustee, and the FIRST through FOURTH paragraphs do not require the Council to become a trustee and thus be subject to the Trust Code provisions.  Further, nothing in the 1943 Deed requires the Council to provide an accounting or submit the property or the Council's records to on-site inspections.

We turn now to the trial court's disposition of the Trustees' causes of action.

### SUIT FOR ACCOUNTING

The Trustees sued the Council for an accounting based on two Trust Code provisions. Their First Amended Original Petition pled that the Council owes them an accounting based on section 114.001.  *See* TEX. PROP. CODE ANN. § 114.001(a) ("The trustee is accountable to a beneficiary for the trust property . . . .").  It also pled that the Council owes them an accounting based on section 113.151.  *See id.* § 113.151(b) ("An interested person may file suit to compel the trustee to account to the interested person.").

We take the petition's factual allegations as true, but we determine and apply the applicable law de novo.  *See Bethel*, 595 S.W.3d at 655.  Because the 1943 Deed does not impose the statutory duties of a trustee on the Council, the Council is not subject to either of these two statutory

provisions. *See* TEX. PROP. CODE ANN. §§ 113.151 ("Demand for Accounting"), 114.001 ("Liability of Trustee to Beneficiary").[6]

Therefore, as the Council's motion alleged, the Trustees' suit for accounting cause of action had no basis in law, and the trial court properly dismissed it. *See* TEX. R. CIV. P. 91a.1; *Bethel*, 595 S.W.3d at 654; *Sanchez*, 494 S.W.3d at 724.

DEMAND FOR INSPECTION OF PROPERTY

The Trustees also pled that they "are entitled to inspect Camp Fawcett, in furtherance of their duties as Trustees, . . . to ensure that [the Council] is fulfilling its fiduciary duties to Plaintiffs pursuant to the 1943 Deed."

The Trustees appear to rely on section 113.051 to justify on-site inspections as part of their duty as trustees. *See* TEX. PROP. CODE ANN. § 113.051 (requiring a trustee to "administer the trust in good faith according to its terms"). But the 1943 Deed did not convey the property to the Council in trust; it conveyed it in fee simple (on a condition subsequent) without reserving a right to inspect the property. *See Hilderbran*, 2021 WL 2211353, at *18 ("[The Council] holds title to Camp Fawcett in fee simple subject to a condition subsequent.").

Taking the petition's factual allegations as true, but determining and applying the applicable law de novo, *see Bethel*, 595 S.W.3d at 655, we conclude the 1943 Deed does not require the Council to permit on-site inspections of the property.

Therefore, as the Council's motion asserted, the Trustees' request for on-site inspections cause of action had no basis in law, and the trial court properly dismissed it. *See* TEX. R. CIV. P. 91a.1; *Bethel*, 595 S.W.3d at 654; *Sanchez*, 494 S.W.3d at 724.

---

[6] The Trustees' briefs do not argue that section 114.001 is a proper basis in law. *See* TEX. PROP. CODE ANN. § 114.001(a) (creating a beneficiary's right to an accounting).

**ATTORNEY'S FEES**

In their third issue, the Trustees challenge the attorney's fees award.

**A.        Parties' Arguments**

The Trustees argue that the trial court erred in awarding the Council its attorney's fees because there was no evidence in the record to support the award.  They note that the Council's motion to dismiss in the clerk's record, which refers to an attached Exhibit A, does not contain an Exhibit A or any evidence of the Council's attorney's fees.

The Council responds that its Exhibit A, which documents its attorney's fees, was sufficient evidence to support the trial court's award.  It insists that it e-mailed its motion to dismiss with its Exhibit A to the trial court about two weeks before the hearing on its motion, and it handed the Trustees and the trial court paper copies of its motion and Exhibit A at the hearing.[7]  But it acknowledges that, for some unknown reason, Exhibit A does not appear in the clerk's record.

**B.        First Supplemental Clerk's Record**

To correct that omission, after the appellate record was filed but before the Council filed its brief, the Council directed the trial court clerk to file a supplemental clerk's record.  *See* Tex. R. App. P. 34.5(c) (supplementing the clerk's record).

On May 8, 2023, a supplemental clerk's record was filed; it contains a file-stamped copy of the Council's Rule 91a motion to dismiss and some additional documents.  We list only those additional documents that are relevant to this issue.

---

[7] The hearing was held, and the trial court signed its dismissal order, on October 17, 2022.

*1.      Notice of Filing Post Judgment Submission*

The Council's one-page Notice of Filing Post Judgment Submission, file-stamped April 21, 2023, states that "[a]ttached hereto is [the Council's] Post-Judgment Submission of business records related to filings in this case." Its certificate of service shows it was served on the Trustees.

*2.      Unsworn Declaration (Business Records)*

Next is a one-page Unsworn Declaration of Konor Cormier, the Council's attorney, dated April 20, 2023. After providing his full name, date of birth, and address, counsel declared that "[t]he records attached hereto are the original or exact duplicates of the original." He added that "[a] true and correct physical copy of all the documents attached to the Sept. 28, 2022 email from Qiana Moore were provided to the visiting judge and opposing counsel at the hearing on Defendant's Motion to Dismiss October 17, 2022." He concluded by declaring "under penalty of perjury that the foregoing is true and correct," and adding the date and place of execution and his signature. *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 132.001 (unsworn declaration, jurat); *Brownhawk, L.P. v. Monterrey Homes, Inc.*, 327 S.W.3d 342, 348 (Tex. App.—El Paso 2010, no pet.) (addressing very similar facts).

*3.      September 28, 2022 E-Mail*

The next document is an e-mail. Its header shows the sender was Qiana Moore,[8] the addressee was the trial court coordinator,[9] the date sent was September 28, 2022, and it had four attached documents. One was titled "Hilderbran – Defendant's Rule 91A Motion to Dismiss.pdf," and another was titled "Hilderbran – Declaration to Defendant's Rule 91A Motion to Dismiss.pdf."

---

[8] Qiana Moore was a legal secretary for Mehaffy Weber, PC, the law firm representing the Council.
[9] The e-mail is addressed to crodriguez@uvaldecounty.com. When the e-mail was sent, Christine Rodriguez was the trial court coordinator.

The body of the e-mail reads "Please see attached filings." Neither the Trustees nor their counsel were addressees on this e-mail.

### 4. *Defendant's Rule 91a Motion to Dismiss*

The next document is a non-file-stamped copy of the Council's motion to dismiss. In it, the Council requested attorney's fees based on the evidence it provided in Exhibit A.

### 5. *Unsworn Declaration (Attorney's Fees) (Exhibit A)*

Although it is not labeled as Exhibit A, the document immediately following the Council's motion to dismiss is a two-page Unsworn Declaration of Konor Cormier. After providing his full name, date of birth, and address, counsel described the reasonable and necessary attorney's fees the Council incurred in defending against the Trustees' suit. He concluded by declaring "under penalty of perjury that the foregoing is true and correct," and adding the date and place of execution and his signature. *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001 (unsworn declaration, jurat).

### 6. *October 17, 2022 E-Mail*

The next document is a two-e-mail thread from October 17, 2022, the date of the hearing. The older message, sent at 8:53 am, was from Qiana Moore to the trial court coordinator:

> Following up. I wanted to make sure you have everything for the hearing this morning. I have attached the documents again and the amended notice of hearing. On e-file the motion shows under review[,] but the district clerk[']s] office says it is received. But just to make sure attached is everything.

The newer message, sent at 8:58 am, was from the trial court coordinator who was responding to Qiana Moore: "I will forward all your documents to Judge Rayes. But please make sure that your attorney takes a hard copy to the hearing." This e-mail exchange similarly did not include the Trustees or their counsel as addressees.

- 17 -

**C.** **Trustees' Motion to Strike**

After the supplemental clerk's record was filed in this court, the Trustees moved to strike the additional documents, including each of the six listed above. The Trustees' motion argues that the Council's notice of postjudgment submission was filed after the trial court's plenary power expired, and the Council cannot supplement the appellate record with such documents. They also argue that "[t]he unsworn business records declaration and the attached documents were never filed or admitted into evidence," and an exhibit attached to a pleading is not evidence unless it is properly introduced and admitted.

We first address their complaint about what can be included in the appellate record.

**D.** **Supplementing the Appellate Record**

Rule 34.5(c) allows the appellate record to be supplemented:

(1) If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item.

. . . .

(3) Any supplemental clerk's record will be part of the appellate record.

TEX. R. APP. P. 34.5(c); *see Roventini v. Ocular Scis., Inc.*, 111 S.W.3d 719, 725 (Tex. App.— Houston [1st Dist.] 2003, no pet.).

*1.* *Second Supplemental Clerk's Record*

Because the appellate record did not conclusively establish that the trial court received and reviewed Exhibit A before it signed the dismissal order, we abated this appeal and ordered the trial court to answer two questions: (1) "Did you receive a copy of Exhibit A at the hearing?" and (2) "If so, did you consider the contents of Exhibit A before you signed the [dismissal] order?"

On June 10, 2024, a second supplemental clerk's record was filed; it includes the trial court's response. The trial court answered both questions in the affirmative.

### 2.   *Trial Court Considered Exhibit A*

Having reviewed the now twice supplemented appellate record, we conclude it conclusively establishes that the trial court received a copy of Exhibit A at the hearing on the Council's motion to dismiss and it considered the contents of Exhibit A before it signed the dismissal order.  Accordingly, we will consider it.  *See* TEX. R. APP. P. 34.5(c)(3); *Brownhawk*, 327 S.W.3d at 348–49; *Roventini*, 111 S.W.3d at 725–26.

We now consider whether Exhibit A constitutes evidence for purposes of Rule 91a.7.

## E.   Evidence Required

Under Rule 91a.7, "the court may award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. Any award of costs or fees must be based on evidence."  TEX. R. CIV. P. 91a.7; *see Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019) ("[A] claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought."); *Strickland v. iHeartMedia, Inc.*, 665 S.W.3d 739, 742 (Tex. App.—San Antonio 2023, pet. denied).

## F.   Pleading Exhibit as Evidence

The Trustees argue that an exhibit attached to a pleading is not evidence unless it is properly offered and admitted into evidence.  *See Shah v. Star Anesthesia, P.A.*, 580 S.W.3d 260, 266 (Tex. App.—San Antonio 2019, no pet.).  But there are circumstances in which an affidavit may be used as evidence.

### 1.   New v. Texas Commerce Bank

For example, in *New v. Texas Commerce Bank*, the bank sued for unliquidated damages, which invoked Rule 243's requirement that "*the court shall hear evidence* as to damages."  *New v. Tex. Commerce Bank, Nat'l Ass'n*, 971 S.W.2d 711, 713–14, 715 (Tex. App.—Austin 1998)

(quoting Tex. R. Civ. P. 243), *case abated* (Oct. 15, 1998), *aff'd in part, rev'd in part*, 3 S.W.3d 515 (Tex. 1999) (per curiam).

The bank's attorney "presented" an affidavit on attorney's fees to the trial court as part of a default judgment proceeding. *Id.* at 714. No witnesses testified at the hearing, and "the only 'evidence' presented to the trial court [was] three affidavits describing the check-kiting scheme and an amount owed for attorneys' fees." *Id.*

The court of appeals rejected the bank's argument "that the trial court held an evidentiary hearing merely by accepting the affidavits attached to its motion." *Id.* It held "that even according the affidavits the status of 'evidence,' such 'evidence' cannot be considered competent and sufficient to support the trial court's award for unliquidated damages and attorneys' fees." *Id.* at 715.

*2.      Texas Commerce Bank v. New*

The supreme court disagreed: "The court of appeals is incorrect." *Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517 (Tex. 1999) (per curiam). It noted that Rule 243 expressly requires that "*the court shall hear evidence as to damages*." *Id.* at 516. But despite that express requirement, it concluded that "because unobjected-to hearsay is, as a matter of law, probative evidence, affidavits can be evidence for purposes of an unliquidated-damages hearing pursuant to Rule 243." *Id.* It added that the "trial court did not err when it considered the affidavits in rendering its default judgment," *id.* at 517, and the attorney's affidavit describing his reasonable attorney's fees "was legally sufficient to support the trial court's attorney's fees award," *id.* at 518.

*3.      No Objections to Exhibit A*

Here, under *Texas Commerce Bank*, the trial court could have based its award of attorney's fees on Exhibit A if the Trustees did not object to it. *See id.* at 517; *Balderrama v. City of Castroville*, No. 04-03-00035-CV, 2003 WL 22047627, at \*2 (Tex. App.—San Antonio Sept. 3,

2003, no pet.) (mem. op.) ("[A]ffidavits are evidence that will satisfy an award of unliquidated damages, such as attorney's fees.").

On September 21, 2022, the Council filed its motion to dismiss, which included this statement: "Attached as Exhibit A is a declaration by the Council's counsel of record seeking [sic] forth its reasonable and necessary attorney's fees through hearing of this matter and in the event of appeal."

On October 10, 2022, the Trustees filed their Plaintiffs' Response to Defendant's Motion to Dismiss. Their response included an affidavit supporting their request for attorney's fees, but it did not object to the absence or contents of the Council's Exhibit A.

On October 12, 2022, the Trustees filed their Plaintiffs' First Amended Original Petition. They again asked for their own attorney's fees, but they did not object in any way to the Council's Exhibit A.

On October 17, 2022, near the end of the hearing on the Council's motion, the Council advised the trial court that "you are entitled to award attorney's fees [and] we did provide evidence of attorney's fees attached to the motion." *Cf. Landa v. Rogers*, No. 03-21-00097-CV, 2023 WL 2697880, at *9 (Tex. App.—Austin Mar. 30, 2023, no pet.) (mem. op.) (noting that "the trial court held a hearing . . . regarding the motion to dismiss, which contained the request for fees, and [the appellant] attended that hearing"). Once again, the Trustees did not object: they did not assert they had not received Exhibit A or object to its contents.

"Because unobjected-to hearsay is, as a matter of law, probative evidence," *Tex. Commerce Bank*, 3 S.W.3d at 516, and the Trustees did not object to Exhibit A, Exhibit A was probative evidence, *see id.* at 518.

We turn now to whether the trial court abused its discretion in awarding the Council its attorney's fees.

**G.      Standard of Review**

"We review an attorney's fees award for an abuse of discretion." *MedFin Manager, LLC v. Stone*, 613 S.W.3d 624, 632 (Tex. App.—San Antonio 2020, no pet.); *accord Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). "A trial court does not abuse its discretion if its decision is supported by some substantive and probative evidence." *In re R.H.B.*, 660 S.W.3d 136, 147 (Tex. App.—San Antonio 2022, no pet.); *accord Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied).

**H.      Evidence of Attorney's Fees**

The Council had the burden to present evidence of its attorney's fees. *Cf.* TEX. R. CIV. P. 91a.7 ("Any award of costs or fees must be based on evidence."); *Rohrmoos*, 578 S.W.3d at 498 (claimant's burden).

The record conclusively establishes that the Council presented its Exhibit A to the trial court at the hearing on the motion to dismiss, and the Trustees did not timely object to Exhibit A's existence or content before the trial court signed the dismissal order. Accordingly, Exhibit A was probative evidence of the Council's reasonable and necessary attorney's fees, and the trial court did not abuse its discretion in awarding the Council its attorney's fees. *See* TEX. R. CIV. P. 91a.7 (requiring an attorney's fee award to be based on evidence); *Tex. Commerce Bank*, 3 S.W.3d at 517; *Balderrama*, 2003 WL 22047627, at *2.

We overrule the Trustees' third issue.

**CONCLUSION**

The 1943 Deed did not convey the property to the Council in trust or require the Council to assume all the duties of a trustee. Accordingly, the trial court did not err in dismissing the Trustees' claims for accounting and inspections as having no basis in law.

The record conclusively establishes that the Council's Exhibit A, which was its attorney's declaration of his reasonable and necessary attorney's fees with supporting details, was presented to, and its contents considered by, the trial court before it signed its order. The Trustees did not object to its existence or contents, and it was probative evidence to support the trial court's award of attorney's fees.

We affirm the trial court's order.

Patricia O. Alvarez, Justice